Peirce Appeal.

Argued October 6, 1955. Before STERN, C. J. STEARNE, JONES and ARNOLD, JJ.

*Norman S. Faulk,* for appellant.

*John G. Marshall,* with him *Moorhead, Marshall & Sawyer,* for appellee.

OPINION BY MR. JUSTICE JONES, January 13, 1956:

This appeal is from an order of the court below affirming the action of a zoning board of adjustment in sustaining the zoning officer's refusal of a permit for the extension of a building to accommodate the normal business expansion of a nonconforming use. The applicant brought this appeal.

In 1945 the appellant became the owner of a lot of ground in the Borough of Beaver located at the corner of Fifth and Navigation Streets. The lot fronted 41.74 feet on Fifth Street and ran back along Navigation Street, preserving a substantially even width throughout, for a distance of one hundred and fifty feet to a twenty-foot alley. It was improved with a dwelling located on the Fifth Street end of the lot, and, at the rear, there was erected thereon a double, one-story, frame garage. By 1949 the owner had established in the garage an iron working, welding and automobile repair business. By March 1, 1951, he had enlarged the garage building for his business purposes to its present size of twenty feet by forty feet; and a portion of the lot to the extent of approximately six hundred square feet, between the garage building and the residence, was used by the owner as an open storage and work area in the furtherance of his business. In addition to that, an open frame lean-to, attached to the garage and

covering approximately one hundred and twenty-five square feet, was also used for storage of tools, equipment and spare parts necessary in the business.

The Borough of Beaver enacted its zoning ordinance on March 13, 1951. The ordinance zoned as commercial practically the entire length of Third (or Main) Street of the borough and two lots directly back of the court house yard and a public square, both of the latter abutting on Third Street. All other property in the borough was zoned residential. Consequently, the appellant's established business located at Fifth and Navigation Streets became, with the adoption of the ordinance, a nonconforming use.

Because of the growth of the appellant's business, he applied on March 30, 1953, to the zoning officer for a permit for the construction of a concrete block addition to his garage building, thirty feet by forty feet in size. A permit was refused by the administrative officer and, on appeal, the board of adjustment affirmed the refusal. The owner's appeal to the court below resulted in the record and order which we now have for review.

Two somewhat similar prior applications for a permit had likewise been refused and, although extensive testimony had been taken at hearings before the board of adjustment upon the appeals to that body, the matter never reached the court below until the appeal from the board's affirmance of the administrative officer's denial of the third application. Upon certifying the record to the Court of Common Pleas, the board of adjustment so condensed the testimony that the court was unable to determine the facts upon which the board had based its findings or the reasons for its conclusions. In that situation, the court remanded the record to the board of adjustment with directions that it institute such further proceedings as were necessary to complete the record and, particularly, that it answer

nine specific questions. However, no additional testimony was adduced before the board. At the hearing on the third application, counsel for all parties had agreed that the board might also consider the testimony taken at the two earlier hearings. From the notes of testimony taken at the three hearings, the board answered the questions propounded by the court and made findings of fact to which the applicant excepted. After argument before the court on the returned record as thus revised, the court entered the ultimate order affirming the board's refusal of a permit. The court based its decision on the restriction in the ordinance against the extension by way of structural alterations of a building housing a nonconforming use, noting that the constitutionality of such a restriction or limitation upon a permissible nonconforming use has never been passed upon by this court.

However, in the view we take of the case, it is unnecessary for us to consider the constitutionality of the restriction. The question here involved is one of law as to the meaning and scope of the provisions of the zoning ordinance with respect to permissible nonconforming uses. The material facts are not in dispute although we may point out that the board's findings in several instances are plainly irrelevant. Thus, the board found that the appellant's *present* business interferes with his neighbors' enjoyment of their residential properties through the congestion of traffic on the streets and bright flashes from welding at night and that the attendant noise and racket annoyed the neighbors. There was no question before the board as to whether the appellant's operation of his lawfully existing nonconforming use should be abated; nor could there have been. Jurisdiction of such a problem is in another forum. Likewise, the finding that the granting

of the permit would adversely affect the value of the neighboring residential properties where many new homes had been built in recent years introduced elements of private personal considerations which should have no part in an exercise of the police power for the promotion of the health, welfare, safety and morals of the public generally; and the new homes must have been built with knowledge of the appellant's existing nonconforming use.

Material portions of Article V of the ordinance, which deal with nonconforming uses, are as follows: "Section 1 (a) The lawful use of land existing at the time of the adoption of this ordinance, although such use does not conform to the provisions hereof, may be continued . . . . (b) The lawful use of a building, existing at the time of the adoption of this ordinance may be continued, although such use does not conform to the provisions hereof, and such use may be extended throughout the building provided no structural alterations are made other than those ordered by an authorized public officer . . . ."

If the magnitude of the property devoted to the appellant's nonconforming business use at the time of the adoption of the ordinance had consisted in its entirety of the twenty feet by forty feet garage building and the lean-to attached, then the restriction on the extension of the use by structural alteration of the building, which the learned court below deemed controlling, would become pertinent. However, such is not the situation which this record presents.

Adjacent to the garage there is an area of seven hundred and twenty-five square feet of the appellant's yard (including the space covered by the lean-to) which was as much devoted to the appellant's business use at the time of the adoption of the ordinance as was the

garage itself. The continued use of that land by the appellant in the operation of his business is expressly authorized by the above-quoted provision of Section 1 of Article V of the ordinance; and nowhere in the ordinance is there an inhibition on the owner's enclosing with a building the land so lawfully employed as a nonconforming use. The clear implication of our decision in *Humphreys v. Stuart Realty Corporation,* 364 Pa. 616, 621, 73 A. 2d 407, is that a nonconforming use may be extended in scope, as the business increases in magnitude, over ground occupied by the owner for the business at the time of the enactment of the zoning ordinance. As our present Chief Justice pertinently stated in the *Humphreys* case, supra, "a non-conforming use cannot be limited by a zoning ordinance to the precise magnitude thereof which existed at the date of the ordinance; it may be increased in extent by natural expansion and growth of trade, neither is it essential that its exercise at the time the ordinance was enacted should have utilized the entire tract upon which the business was being conducted: *Gilfillan's Permit,* 291 Pa. 358, 362, 140 A. 136, 138; *Haller Baking Co.'s Appeal,* 295 Pa. 257, 261, 262, 145 A. 77, 79; *Cheswick Borough v. Bechman,* 352 Pa. 79, 82, 42 A. 2d 60, 62."

It is clear beyond dispute that the appellant has a recognized right under the zoning ordinance to continue his nonconforming use over the portion of his lot devoted to his lawful business purpose at the time of the adoption of the zoning ordinance. And, it seems equally clear that it is within such right for the appellant to enclose the open-air portion of his operation of the nonconforming use within a building. Unless such a building could be found to be detrimental to the public welfare, safety or health, the ordinance could not be thought to have excluded it: cf. *Gilfillan's Permit,* supra.

However, in addition to the seven hundred and twenty-five square feet of the appellant's yard which is, and at all times presently material has been, an integral part of the property used in the furtherance of the nonconforming purpose, the appellant seeks to include within the walls of his proposed building four hundred and twenty-five additional square feet of the yard immediately adjacent to the portion already used for the nonconforming business. If the use of such additional property is reasonably necessary in order to accommodate the requirements of the natural growth of the business, the appellant's remedy would be by way of a variance, the requisites for which are hardship to the owner if not allowed so to use his property and want of any detriment to the public interest if used in the manner proposed: *Blanarik Appeal*, 375 Pa. 209, 212, 100 A. 2d 58.

In the *Blanarik* case, which was concerned with an application for an "exception" (more correctly, a variance) for the extension of a nonconforming use, Mr. Chief Justice STERN said,—"Apparently Blanarik required some additional room for the normal increase of his business and it would be imposing a wholly unnecessary hardship upon him to prevent his taking advantage of that increase, while, on the other hand, the proposed extension to his building could not, in the remotest degree, be contrary to the public interest or militate against the general purpose of the ordinance; indeed the Board of Adjustment did not give any meritorious reason whatever for their action." The foregoing is equally applicable to the instant case so far as the use of the additional four hundred and seventy-five square foot portion of the lot is concerned.

The restrictive provision in Section 1 (b) of the ordinance against the extension of a nonconforming

use by means of structural alterations in a building has no bearing on the facts of this case. The provision relates to a building entirely housing a nonconforming use which may be extended, as of right, throughout the building. Here, the building to be erected will be on the open-air portion of the lot devoted to the nonconforming use at the time of the adoption of the ordinance. The only change to be made in the existing garage building will be the removal of the wall of the garage on the side upon which the new building will abut. To say that the two permissible buildings may not be so joined and thus made communicating would be an unreasonable requirement.

The order of the court below is reversed at the costs of the Borough of Beaver and the record remanded with directions that the zoning administrator issue to the appellant a permit for the erection of a building on the seven hundred and twenty-five square feet of the lot upon which the nonconforming use has, in part, been operated and, also, on the additional four hundred and twenty-five square feet, immediately adjoining, in the event an application for a variance with respect thereto be entertained and allowed.