## Civera v. Zoning Board of Adjustment

*Dominic Bonavitacola*, for appellant.

*Ronald H. Beifield,* for Zoning Board of Adjustment.

GELFAND, *J.*, June 22, 1977—This matter comes before the court on appeal by Steve A. Civera (hereinafter called appellant) from an order of the Zoning Board of Adjustment (hereinafter called the board), which granted a variance to the Woodmere Art Gallery, Inc., (hereinafter called Woodmere), intervenor herein, for the construction of a private parking lot accessory to an existing art gallery, a nonconforming use in an R-1 Residential District. This specific use is not permitted under §14-202(1)[1] of the Philadelphia Zoning Code.

The board held a public hearing on July 21, 1976, at which time testimony to the following effect was presented:

(1) that Woodmere is a nonprofit qualified corporation enjoying tax immunity and tax exemptions under state and Federal laws.

---

1. "§14-202. 'R-1' Residential District.

"(1) Use Regulations. (a) The specific uses permitted in this District shall be the erection, construction, alteration or use of buildings and/or land for: (.1) Detached single-family dwellings; (.2) Private garage and/or stable as an accessory use."

(2) that the gallery has existed at the northeast corner of Germantown Avenue and Bells Mill Road for 35 years and is a nonconforming use.

(3) that the gallery is an important cultural institution in Philadelphia and has several functions, which include conducting six art shows during the year; providing a facility for musical and cultural events and civic activities; and providing facilities for teaching art and sculpture and weaving.

(4) that annually thousands of people attend the gallery, and several students attend throughout the week.

(5) that Woodmere has an extremely dangerous entrance at the corner of Bells Mill Road and Germantown Avenue, which is one of the most dangerous intersections in Philadelphia.

(6) that there is very limited parking on the site at Woodmere and attendees are forced to use on-street parking.

(7) that the new parking lot would virtually eliminate the need for on-street parking.

(8) that the plan has been approved by traffic authorities in Philadelphia.

(9) that the plan has been approved as posing no watershed problem.

(10) and that the new parking lot will be landscaped and made aesthetically attractive.

Appellant appeared at the aforementioned hearing claiming primarily that the parking situation was not so serious as to justify the granting of a variance and that the planned parking lot would detrimentally affect the aesthetic appearance of the neighborhood and the value of his property.

On July 23, 1976, the board granted a variance, concluding, inter alia, that Woodmere had proven hardship which is special and peculiar to the prop-

erty; demonstrated that the plan would not adversely affect the public health, safety and general welfare; and proven that the grant of a variance would be in harmony with the criteria set out in §14-1802[2] of the Philadelphia Zoning Ordinance for the granting of a variance.

Subsequently this appeal was filed and thereafter this court heard argument on January 5, 1977.

At that time two principal issues were presented:

I. Whether Woodmere sufficiently demonstrated to the board that unnecessary hardship unique or

---

2. "§14-1802. Criteria for Granting Variances.

"(1) The Zoning Board of Adjustment shall consider the following criteria in granting a variance under §14-1801(1)(c): (a) that because of the particular physical surroundings, shape, or topographical conditions of the specific structure or land involved, a literal enforcement of the provisions of this Title would result in unnecessary hardship; (b) that the conditions upon which the appeal for a variance is based are unique to the property for which the variance is sought; (c) that the variance will not substantially or permanently injure the appropriate use of adjacent conforming property; (d) that the special conditions or circumstances forming the basis for the variance did not result from the actions of the applicant; (e) that the grant of the variance will not substantially increase congestion in the public streets; (f) that the grant of the variance will not increase the danger of fire, or otherwise endanger the public safety; (g) that the grant of the variance will not overcrowd the land or create an undue concentration of population; (h) that the grant of the variance will not impair an adequate supply of light and air to adjacent property; (i) that the grant of the variance will not adversely affect transportation or unduly burden water, sewer, school, park or other public facilities; (j) that the grant of the variance will not adversely affect the public health, safety or general welfare; (k) that the grant of the variance will be in harmony with the spirit and purpose of this Title."

peculiar to the property would result if the variance was not granted;

II. Whether the board abused its discretion or committed an error of law in granting the variance.

Initially, we must note that although Woodmere applied for a parking lot as an accessory to a non-conforming use, the board treated the application as one for a variance and, in fact, granted a variance. Further, although the standard to be met for granting a variance is higher than that required for expansion of a nonconforming use, it is the appropriate standard in this case. In addition, the board was correct in determining that Woodmere met that standard.

It is a basic principle that a nonconforming use is to be allowed some natural expansion without requiring the property user to obtain a variance: Peirce Appeal, 384 Pa. 100, 119 A. 2d 506 (1956), presents the conditions upon which such expansion is permitted:

"[A] nonconforming use may be extended in scope, as the business increases in magnitude, over ground occupied by the owner for the business at the time of the enactment of the zoning ordinance. As our present Chief Justice pertinently stated in the Humphreys case [Humphreys v. Stuart Realty Corp., 364 Pa. 616, 621 (1950)]: 'a non-conforming use cannot be limited by a zoning ordinance to the precise magnitude thereof which existed at the date of the ordinance; it may be increased in extent by natural expansion and growth of trade, neither is it essential that its exercise at the time the ordinance was enacted should have utilized the entire tract upon which the business was being conducted.'" 384 Pa. at 105.

A structure which would expand a nonconforming use over land already occupied by that activity is to be permitted "[u]nless such a building could be found detrimental to the public welfare, safety or health." Peirce Appeal, supra, at 105. Unnecessary hardship need not be demonstrated.

This expansion of right, however, is limited to land *already occupied* by the nonconforming use. "[T]he expansion of a nonconforming use does not in and of itself entitle the owner to erect structures on a portion of his land not previously occupied by the business enterprise." Mack Zoning Appeal, 384 Pa. 586, 589, 122 A. 2d 48 (1956); Philadelphia v. Angelone, 3 Pa. Commonwealth Ct. 119, 280 A. 2d 672 (1971). The burden is on the land user to prove that the land was previously so used: Philadelphia v. Angelone, supra. If the land user fails to meet this burden, or seeks to put *additional property* to the nonconforming use a variance must be obtained. The fact that the intended plan is an expansion of a nonconforming use is not conclusive in the decision whether to grant or deny a variance, but it is an important factor to be considered: Mack Zoning Appeal, supra; Philadelphia v. Angelone, supra.

Woodmere seeks to build a private parking lot as an accessory to a nonconforming use on land which it has long owned. However, Woodmere has not demonstrated that the land on which the parking lot would be built was previously put to the nonconforming use; and, in fact the testimony would suggest otherwise. Hence, in the circumstances here, a variance is required before the parking lot could be permitted and the board properly considered Woodmere's application to be one for a variance.

A variance amounts to a "violation" of a zoning ordinance and cannot be granted upon the whim of the board or on personal grounds, but must strictly meet the requirements of the law: Jacobs v. Philadelphia Zoning Board of Adjustment, 1 Pa. Commonwealth Ct. 197, 273 A. 2d 746 (1971).

In the instant case a variance would be appropriate upon a showing by Woodmere that a refusal of the permit to create a parking lot would result in an unnecessary hardship and permitting same would not be contrary to the public interest: Mack Zoning Appeal, supra; Philadelphia v. Angelone, supra. In his brief and in oral argument, appellant here urged that Woodmere did not meet the unnecessary hardship test and consequently a variance is inappropriate.

In defining "unnecessary hardship," our courts have held that it must be *"unnecessary"* and not *"mere"* hardship. Furthermore, it must be unique or peculiar to the property involved, as distinguished from a condition affecting the entire district as a result of the impact of zoning regulations: Magrann v. Zoning Board of Adjustment, 404 Pa. 198, 200-1, 170 A. 2d 553 (1961); Richman v. Zoning Board of Adjustment, 391 Pa. 254, 259-60, 137 A. 2d 280 (1958). Finally, there must be some practical necessity, and the reasons for the variance must be "substantial, serious, and compelling." Magrann v. Zoning Board of Adjustment, supra, at 200-1; Ventresca v. Exley, 358 Pa. 98, 100, 56 A. 2d 210 (1948).

Woodmere has demonstrated that its property meets these tests. The gallery it operates is a nonconforming use which has long existed at its present site. This site located at the corner of Germantown Avenue and Bells Mill Road is at one of the

most dangerous intersections in Philadelphia, and one where there is "a tremendous amount of traffic." The gallery is an important public institution which has several cultural and civic functions and draws thousands of attendees annually. Woodmere and the public using its facilities are compelled to resort to on-street-parking in a heavily travelled and congested area thereby imposing a severe, substantial and unique hardship on them. This hardship is made worse by the present entrance driveway which is extremely dangerous both to the public visiting Woodmere and to the public using the adjacent roads. Further, the parking lot plan for which Woodmere seeks a permit promises to ameliorate this situation.

In determining whether proof of unnecessary hardship was established, the board did conclude that it was adequately demonstrated and that the proposed use would not be detrimental to the public health, safety and welfare. The board is entitled to weigh and balance conflicting arguments and to decide which, in its discretion, is the most credible. It is not the position of this court to substitute its judgment for that of the board: Pfile v. Borough of Speers, 7 Pa. Commonwealth Ct. 226, 298 A. 2d 598 (1972).

Accordingly, after examination of the record and after hearing argument, we are irresistibly led to the conclusion that the board correctly recognized and applied the proper legal tests in determining that Woodmere had met the required criteria, and, therefore, was entitled to a variance from the literal terms of the zoning ordinance.

It is well settled that this court has a limited scope of review in a zoning appeal, and when additional

testimony is not taken, our function is only to review the action of the board on the record made before that body in order to determine whether the board committed a manifest abuse of discretion or error of law: Pyzdrowski v. Pittsburgh Board of Adjustment, 437 Pa. 481, 263 A. 2d 426 (1970).

In the instant matter, no additional testimony was taken and in a similar case, the Supreme Court of Pennsylvania clearly outlined the scope of a lower court's review:

"In the zoning appeal the court below took no testimony, concluding that there had been a full and complete hearing before the Zoning Board of Adjustment at which both parties gave testimony and were represented by counsel, the record in the equity case contained no relevant testimony which had not been previously given in the hearing before the Board of Adjustment, and there was little or no dispute as to the facts. Consequently, the court below correctly held that the *only question properly before it was whether the Board of Adjustment had committed an error of law or flagrant abuse of its discretion in* granting the variance." Moyerman v. Glanzberg, 391 Pa. 387, 395-96, 138 A. 2d 681 (1958). (Emphasis supplied.)

Having determined that the board correctly found that Woodmere had demonstrated unnecessary hardship, we must, therefore, conclude that it did not abuse its discretion in granting the requested variance. Further, the notes of testimony and briefs in connection with the instant matter clearly indicate that the other aforementioned legal criteria were also amply demonstrated.

48

Consequently, on January 13, 1977, this court issued the following order:

After oral argument and consideration of the written briefs and the record below it is hereby ordered and decreed that the appeal of appellant is dismissed and the decision of the Zoning Board of Adjustment, granting the requested variance, is affirmed.