Bluebell Associates, Appellant *v.* The Township Engineer for Whitpain Township and Manus McHugh, III and Deidre McHugh, his wife, Appellees.

Bluebell Associates *v.* Board of Supervisors of Whitpain Township and Manus McHugh, III and Deidre McHugh, his wife. Board of Supervisors of Whitpain Township, Appellant.

600

Argued April 3, 1979, before President Judge Bowman and Judges Crumlish, Jr., Wilkinson, Jr., Mencer, DiSalle, Craig and MacPhail. Judges Rogers and Blatt did not participate.

*Richard L. Bazelon,* with him, of counsel, *Dilworth, Paxson, Kalish, Levy & Kauffman,* for Bluebell Associates.

*Marc B. Kaplin,* with him, of counsel, *Lesser & Kaplin,* for Board of Supervisors of Whitpain Township.

OPINION BY JUDGE CRAIG, September 12, 1979:

These two appeals, consolidated for argument and consideration, are from orders of the Court of Common Pleas of Montgomery County, the appeal at No. 269 C.D. 1977 involving that court's refusal, in a mandamus action against the engineer of Whitpain Township (township), to compel the issuance of a grading permit for an airport extension, and the appeal at No. 334 C.D. 1978 concerning an order granting Bluebell Associates (applicant) approval of that same airport enlargement in a statutory zoning proceeding.

A common factual history is the basis for both cases. Applicant's airport, Wings Field, has been located on a 287-acre tract in the township since 1929. From 1950, the year the township zoning ordinance was adopted, the airport has been a legal non-conform-

ing use in a district zoned R-1 Residential, allowing single-family dwellings. After 1971 applicant acquired an additional 6-acre tract adjacent to the north end of the existing runway. The chief subject of the case has been applicant's proposal to lengthen the existing runway by approximately 1,000 feet over that after-acquired land, which is also zoned R-1.

By letter in 1975, applicant challenged the validity of the ordinance under Sections 609.1 and 1004 of the Pennsylvania Municipalities Planning Code (MPC).[1] The challenge documents duly included a plan of the proposed runway extension and a proposed curative amendment of the ordinance to create an Airport District.

After five hearings in the first half of 1976, the township's Board of Supervisors adopted a three-paragraph resolution entitled "Resolution to Wings Field" resolving that:

> the application of Blue Bell Land Associates to extend the runway of Wings Field to a maximum length of 3500 feet to be approved.
>
> ... the application of Blue Bell Land Associates for a Curative Amendment to create an Airport District be rejected because it is not sufficiently comprehensive to meet the needs of the Township in regulating an Airport District.
>
> ... the Township Solicitor prepare an ordinance for adoption creating an Airport District....

The last paragraph listed substantive details for the solicitor's guidance, including a description of area beyond applicant's land and reference to planning commission suggestions concerning limitations on aircraft size and weight and provisions for helicopters.

---

[1] Act of July 31, 1968, P.L. 805, *as amended*, 53 P.S. §§10609.1, 11004.

The resolution, as is clearly indicated by its wording, did not constitute an amendment of the township's zoning ordinance.

When applicant sought a grading permit on the authority of the resolution, the township engineer, in consultation with its manager and solicitor, refused the permit on the basis that the effect of the resolution was to reject the curative amendment so that no permit could be obtained unless a zoning variance were to be obtained from the zoning hearing board.

Applicant thereupon filed a mandamus action which, after hearing, was dismissed by Judge HORACE A. DAVENPORT and a court en banc, on the ground that the resolution did not provide a clear legal basis on which to command issuance of the permit.

Applicant also filed a statutory zoning appeal in the court below on the basis that the curative amendment had been denied improperly, an appeal authorized by MPC §1004(3), 53 P.S. §11004(3). Another judge of the court below granted the relief sought by the appeal, somewhat paradoxically *affirming* the township supervisors' decision. The lower court found that the township supervisors had concluded that their ordinance fails to provide for airport use and is "for that reason illegal and unconstitutional as it applies to appellant's property. . . ." That decision was also affirmed by a court en banc in the lower court.

At the outset, we should identify the legal nature of what has been done here by the township supervisors and by the court below.

First, the record is clear that applicant's initiating action with the township was to request a curative amendment in the explicit and classic sense of MPC §1004, not a variance. The challenge, in addition to presenting plans and an express Airport District curative amendment draft, raised questions of gen-

eral ordinance validity on the basis of exclusionary zoning, not a question of the invalidity of the ordinance as applied to the particular circumstances of applicant's property.

It is equally clear that the township supervisors, in law, denied the curative amendment. The second paragraph of the resolution plainly states that the curative amendment is "rejected". MPC §1004(4), 53 P.S. §11004(4), stipulates that "a curative amendment is denied when (i) the governing body notifies the landowner that it will not adopt the amendment. . . ."

Because the township supervisors did not act legislatively to amend the zoning ordinance, by either the resolution or any other action on this record, the first paragraph of the resolution, granting the specific application to extend the runway of Wings Field, was necessarily the purported grant of a variance. The concept of a "variance" has been so long well understood that neither the MPC nor the court decisions under it have found it necessary to express its essence in a dictionary-style definition. The basic meaning of the term has been carried over from the zoning enabling statutes which preceded the MPC, which expressed the basic nature of a variance as a departure from "the terms of the ordinance" and from "literal enforcement of the provisions of the ordinance," only "in specific cases."[2] Hence the first paragraph of the resolution here was the grant of a variance, because it departed from the literal requirements of the R-1 Residential zoning to allow an extension of a legal nonconforming use over after-acquired

---

[2] Section 3107 of The First Class Township Code, Act of June 24, 1931, P.L. 1206, *as amended, formerly* 53 P.S. §58107, repealed by MPC §1201(3). See *Kline Zoning Case,* 395 Pa. 122, 148 A.2d 915 (1959), and citations therein.

land in that same zoning district. It is settled that such an extension, if warranted, can be granted by a variance issued by the zoning hearing board. *Pierce Appeal,* 384 Pa. 100, 119 A.2d 506 (1956); *Mack Zoning Appeal,* 384 Pa. 586, 122 A.2d 48 (1956); *Philadelphia v. Angelone,* 3 Pa. Commonwealth Ct. 119, 280 A.2d 672 (1971). Both Sections 603 and 912 of the MPC (53 P.S. §§10603, 10912) confer the variance power exclusively upon the zoning hearing board, not upon the governing body.

We therefore must affirm the lower court's dismissal of the mandamus complaint, here at No. 334 C.D. 1978, because the curative amendment application had been denied and the township supervisors lacked authority to grant the variance purported by their resolution.[3] At the very least, there was no "clear legal right" to a permit as a basis for relief mandamus. *Commercial Properties, Inc. v. Peternel,* 418 Pa. 304, 309, 211 A.2d 514, 517-18 (1965).

In view of the denial of the curative amendment request, the applicant had standing to bring the zoning appeal which remains before us for decision, at No. 269 C.D. 1977.

A legally accurate description of the lower court decision in the zoning appeal is that the curative amendment denial was reversed, not that the township decision was affirmed in any respect.

---

[3] For the guidance of municipal governing bodies dealing with curative amendment requests, we note that the thrust of the MPC is that such requests be decided essentially within the governing bodies' legislative sphere, by denying the request, or adopting the proposed curative amendment, or adopting another amendment—any such ordinance amendment to be enacted in accordance with the procedures prescribed by Article 6 of the MPC, 53 P.S. §10607-10611. The governing body may choose to cure the defect by an amendment other than that proposed by the challenging landowner. *Ellick v. Board of Supervisors of Worcester Township,* 17 Pa. Commonwealth Ct. 404, 411, 333 A.2d 239, 244 (1975).

After the governing body "refuses to act on a curative amendment, and the matter is appealed to the courts, the curative amendment is no longer a viable matter at issue before the court." *Ellick v. Board of Supervisors of Worcester Township,* 17 Pa. Commonwealth Ct. 404, 415, 333 A.2d 239, 246 (1975). As there said, it is then the duty of the court to decide the purely legal question of whether the challenged zoning ordinance is legal or constitutional and, if the ordinance is determined to be invalid, the court must review the action with respect to the development plans proposed.

Therefore, as the court below essentially recognized, the issue in the zoning appeal is whether or not the ordinance was unlawfully exclusionary, by failing to provide for an airport as a permitted use (not just a legal nonconforming use) anywhere in the township.

Citing *General Battery Corp. v. Zoning Hearing Board,* 29 Pa. Commonwealth Ct. 498, 371 A.2d 1030 (1977), the court below correctly stated that the resolution of that issue involves three component questions:

First, is the prohibition total? Second, is the particular use 'legitimate'? If the foregoing determinations are in the affirmative, the third determination is whether the municipality has met its burden to establish the validity of the prohibition 'by evidence establishing what interest is sought to be protected.'

However, the lower court proceeded to say:

Our discussion of these issues need not be lengthy since we have concluded the Township has already decided those issues in favor of Bluebell, and the question is merely whether the evidence and the law supports these conclusions.

In effect, the lower court treated the township's resolution as an admission of the invalidity of its existing ordinance. However, the resolution does not necessarily constitute such an admission; a fair reading of the resolution as easily could lead us to conclude that the township supervisors proposed a new airport district provision as a matter of good policy, not to repair an illegal gap, and then strayed beyond their powers to grant just a variance for the expansion of a legal nonconforming use. Hence the three component questions must be met without the aid of an admission by the township.

As to the first component question, the township claims that airports are permitted by the I Limited Industrial District provision of the ordinance, which presents a list of prohibited uses and also allows any "industrial use not specifically excluded," if it meets certain performance standards. This contention is, we believe, substantially refuted by the fact that the township, while the application was before it, never interpreted the industrial district provisions as intended to embrace airports.

On this point, the resolution of the supervisors is more illuminating. Although not constituting any admission of illegality, it amounts to a strong declaration that "the needs of Township in regulating an Airport District" are not presently met, as evidenced by the direction that the township solicitor prepare an amendment to embrace regulation of aviation facilities.

We come then to the second component question, whether the use of land for an airport is a "legitimate" use, that is, one "which is not so particularly objectionable and undesirable that its prohibition appears prima facie to be designed to protect the public interest." *General Battery,* 29 Pa. Commonwealth Ct. at 501, 371 A.2d at 1032. Thus, exclusion of a use

type which is not legitimate, being prima facie justified, remains presumptively valid.

Careful consideration of our decision in *Appeal of Green & White Copter, Inc.,* 25 Pa. Commonwealth Ct. 445, 360 A.2d 283 (1976) presents a clear basis for concluding that the total exclusion of substantial aviation facilities, as a type of use, from a largely residential township, can be accomplished without loss of the presumption of validity. In *Green & White Copter* we held:

> Here, we believe that heliports, particularly in residential areas, embody a land use, the total exclusion of which appears *prima facie* to be designed to protect the public interest. . . . We agree with the lower court that the requested land use is one that the zoning law permits a community to protect against.
>
> The potential safety problems and disturbances to the tranquility of the area are obvious. While air travel facilities are not nuisances per se, they become nuisances in fact in a particular situation. Necessarily, the proposed use in this case would impinge upon the rights of neighboring landowners in the use and enjoyment of their property. If any further evidence of the potential for interference with adjoining property is required, it is provided by the fact that air flights over property have been found to constitute a taking of land near airports. See, e.g., Griggs v. Allegheny County, 369 U.S. 84, rehearing denied, 369 U.S. 857 (1962).

25 Pa. Commonwealth Ct. at 450, 360 A.2d at 285-86. Contrary to the view of the lower court that a commercial airport should be considered a legitimate use type when a private heliport is not, it seems that a substantial airport for fixed-winged flights, whether

private or public, would *a fortiori* have a greater potential for detriment than a heliport.

We therefore decide that, in a residential township of this nature, zoning provisions permitting airports may be omitted without placing upon the municipality the burden of demonstrating a justification, as set forth in the third component question. There is no essential inconsistency between our conclusion and the willingness expressed in the township resolution to consider amending the ordinance to contain affirmative provision for aviation facilities under acceptable requirements.

As indicated above, if applicant here has a remedy for the expansion of its legal nonconforming use over after-acquired property, it is by way of a variance proceeding before the zoning hearing board, the merits of which are not before us.

Having affirmed the decision of the court below in the mandamus case, we will reverse the lower court's decision in the zoning appeal.

Judges CRUMLISH, JR., WILKINSON, JR. and MENCER note dissents.

ORDER IN No. 269 C.D. 1977

AND Now, this 12th day of September, 1979, the order of the Court of Common Pleas of Montgomery County, dated September 23, 1976, dismissing the mandamus action, is affirmed.

ORDER IN No. 334 C.D. 1978

AND Now, this 12th day of September, 1979, the order of the Court of Common Pleas of Montgomery County, dated February 1, 1978, is reversed, and this case is remanded with the direction that the zoning appeal be denied.