558 A.2d 178

Cricklewood Hill Realty Associates *v.* Zoning Board of Adjustment of The City of Pittsburgh and William G. Joseph and Cricklewood Hill Tenant Association. City of Pittsburgh, Appellant.

Argued February 6, 1989, before Judges CRAIG and PALLADINO, and Senior Judge NARICK, sitting as a panel of three.

*Kellen McClendon*, Assistant City Solicitor, with him, *D. R. Pellegrini*, City Solicitor, for appellant.

*A. Bruce Bowden,* with him, *Stephen Yakopec, Jr.,* and *K. Sidney Neuman, Buchanan Ingersoll Professional Corporation,* for appellee, Cricklewood Hill Realty Associates.

OPINION BY JUDGE PALLADINO, May 9, 1989:

The City of Pittsburgh appeals from a decision of the Court of Common Pleas of Allegheny County (trial court) which reversed a decision of the Zoning Board of Adjustment of the City of Pittsburgh (ZBA) and granted the request of Cricklewood Hill Realty Associates (Realty Associates) for a variance from the definition of family contained in the Pittsburgh Zoning Ordinance (Ordinance).

Realty Associates is the owner of an apartment complex at 700 Forbes Avenue in the City; the complex is a 24 story apartment building containing 314 apartments of varying size. The property is located in an AP Planned Commercial-Residential Development District, and is the only tract in the subject AP District. The property is surrounded on three sides by the campus of Duquesne University, which is zoned I-C, Institutional-Civic, and on the fourth side the property is adjacent to an M-2 Limited Industrial District. Ninety-seven percent of the tenants in the apartment building are students.

The Ordinance limits occupancy of a dwelling unit to one person or one family. "Family" is defined in the Ordinance as:

> (a) An individual, or two or more persons related by blood or marriage or adoption, living together in a dwelling unit; or
>
> (b) A group of not more than three persons who need not be related by blood or marriage or adoption, living together as a single housekeeping unit in a dwelling unit, and sharing common facilities as considered reasonably appropriate for a family related by blood, marriage or adoption; in either case exclusive of usual servants.

Thus, under the terms of the Ordinance, occupancy in all of Realty Associates' apartments is limited to three unrelated people. Realty Associates sought to lease certain of its apartments to four unrelated people; accordingly, Realty Associates requested that the ZBA grant it a variance[1] from the Ordinance's definition of family.[2] The ZBA denied the requested variance, stating that it could find

---

[1] Realty Associates did not initiate the request for a variance. Although we refer to Realty Associates as the applicant before the ZBA, the prior owners of the apartment complex began the appeal process. After its purchase of the property, Realty Associates pursued the action begun by the prior owners.

[2] The transcript of the hearing before the ZBA indicates that Realty Associates requested variances from the Ordinance's definition of "dwelling unit" or "family" and also requested that the ZBA reverse the decision of the Zoning Administrator denying Realty Associates' request for an occupancy permit permitting more than three unrelated persons to occupy each apartment. In its decision, the ZBA stated as follows: "[Realty Associates] proposes to occupy the dwelling units with four (4) unrelated persons living as a common household unit, instead of the permitted three (3) unrelated persons; and requesting the Board to grant a variance for the proposed use." Our discussion focuses on the issue of a variance from the definition of family because that is the ground relied upon by the trial court in granting relief to Realty Associates.

no exceptions to the definition of family. Realty Associates appealed to the trial court, and the trial court, without taking additional evidence, reversed the ZBA decision. Although Realty Associates raised six issues before the trial court,[3] the trial court based its decision on the denial of a variance from the definition of family; the trial court concluded that that denial was a manifest abuse of discretion. Accordingly, the trial court granted the requested variance. The City has appealed to this court. For the reasons which follow, we reverse and remand.

Where, as here, the trial court accepted no additional evidence, our scope of review is limited to a determination of whether the ZBA abused its discretion or committed an error of law. *Kassouf v. Zoning Hearing Board of Scott Township*, 112 Pa. Commonwealth Ct. 182, 535 A.2d 261 (1987). The City argues that the ZBA did not abuse its discretion or commit an error of law in denying the requested variance, and therefore requests that we reverse the decision of the trial court.

The City first argues that neither the ZBA nor the trial court had authority to grant a variance from a definition in the Ordinance. The City asserts that the definitions in the ordinance are legislative pronouncements and, as such, cannot be redefined by a judicial body. Although we agree that a judicial body may not redefine legislative terms, the City's argument ignores the very nature of variances. A variance is a departure, in specific cases, from " 'the terms of an ordinance' and from 'literal enforcement of the provisions of the ordinance. . . .' " *Bluebell Associates v. The Township Engineer for Whitpain Township*, 45 Pa. Commonwealth Ct. 599, 604, 405 A.2d 1070, 1072 (1979) (quoting section 3107 of The

---

[3] The other five issues raised by Realty Associates are discussed later in this opinion.

First Class Township Code, Act of June 24, 1931, P.L. 1206, *as amended, formerly* 53 P.S. §§58107, repealed by the Pennsylvania Municipalities Planning Code, Act of July 31, 1968, P.L. 805, *as amended,* 53 P.S. §§10101-11202). The Act of March 31, 1927, P.L. 98 (Act), *as amended,* 53 P.S. §25057, specifically empowers the ZBA to:

> . . . authorize upon appeal in specific cases such variance from the terms of the ordinance as will not be contrary to the public interest, where, owing to special conditions, a literal enforcement of the provisions of the ordinance will result in unnecessary hardship and so that the spirit of the ordinance shall be observed and substantial justice done.

In fact, language very similar to that found in section 25057 of the Act, 53 P.S. §25057, appears in section 909.05(a) of the Ordinance:

> (a) Upon appeal from a decision of the Administrator in accordance with the provisions of this Zoning Ordinance and the rules of procedure of the Board, the Board shall have the power to vary or adjust the strict application of the requirements of this Zoning Ordinance for only a use permitted in the district where the lot is located, in the case of an exceptionally irregular, narrow, shallow or steep lot or other exceptional physical condition not provided for in the district regulations or as a special exception, where strict application would result in practical difficulty or unnecessary hardship that would deprive the owner of the reasonable use of the land or structures involved, but in no other case.

Thus, by virtue of section 25057 of the Act, 53 P.S. §25057, the ZBA has authority to grant a variance from

the *terms* of the Ordinance. Furthermore, the City's Ordinance itself empowers the ZBA to *vary* or *adjust* strict application of the Ordinance. Accordingly, we reject the City's argument that the ZBA and the trial court were without authority to grant the variance requested.

The City also argues, however, that Realty Associates did not meet its burden of proving its entitlement to a variance. As noted above, the ZBA may grant a variance where, owing to special circumstances or conditions of the property, application of the regulations "would result in practical difficulty or unnecessary hardship that would deprive the owner of the reasonable use of the land or structures involved. ..." §909.05(a) of the Ordinance. *See Thompson v. Wean,* 78 Pa. Commonwealth Ct. 108, 466 A.2d 1126 (1983). Realty Associates asserted before the Board and the trial court that its unique situation results in an unnecessary hardship warranting the grant of a variance. Realty Associates argued that the following factors have created an unnecessary hardship: 1) the location of the building; 2) the building's ninety-seven percent student population; 3) the building's proximity to Duquesne University and other downtown Pittsburgh schools; 4) the building's status as the only property in the AP District; and 5) the building's unmarketability as the luxury apartment complex it was intended to be.

While these factors might make the property unique, our review of the record establishes that the only hardship alleged by Realty Associates is economic. At the ZBA hearing, Chairman Joseph S. Mistick asked why the apartments could not be rented to three students in each unit. Vincent A. Nese, the partner in charge of management of the property, responded: "Probably because it would be a financial hardship, not only for us but for the students, too." N.T. at 14. We have repeatedly held that economic hardship alone is an insufficient basis for the grant of a variance. *Thompson*. "[M]ere evidence that the

zoned use is less financially rewarding than the proposed use is insufficient to justify a variance." *Valley View Civic Association v. Zoning Board of Adjustment*, 501 Pa. 550, 556, 462 A.2d 637, 640 (1983). Accordingly, the ZBA did not abuse its discretion or commit an error of law in denying Realty Associates' requested variance. We will, therefore, reverse the trial court's grant of a variance from the definition of family.

Our conclusion as to the variance does not, however, end the case. The trial court noted that Realty Associates had raised six issues before the trial court. The trial court addressed only one. The trial court stated the six issues as follows:

> On its appeal before this Court, Appellant has raised six arguments which are as follows: (1) a variance should be granted from the definition of 'dwelling unit'; (2) a variance should be granted from the definition of 'family'; (3) a variance from requirement [sic] that 'lodgers' only be permitted in single-family, duplex and row houses; (4) a variance be granted from the definition of 'educational institution'; (5) the occupancy permit was improperly denied because the definition of 'family' was incorrectly applied or unconstitutional as applied to the subject property; and (6) the zoning for the subject property is discriminatory and amounts to spot zoning.

*Cricklewood Hill Realty Associates v. Zoning Board of Adjustment of the City of Pittsburgh,* (No. SA2699 of 1987, filed August 8, 1988), slip op. at 2-3. Although Realty Associates has not established its entitlement to any of the requested variances, it is entitled to a decision on issues five and six, *i.e.*, denial of the occupancy per-

mit[4] and the possibility of spot zoning. Accordingly, we will remand the case to the trial court.

Reversed and remanded.

## ORDER

AND NOW, May 9, 1989 the order of the Court of Common Pleas of Allegheny County in the above-captioned matter is reversed and the case is remanded for proceedings consistent with this opinion.

Jurisdiction relinquished.

---

[4] Because Realty Associates is not entitled to a variance, it seems highly unlikely that it could be entitled to an occupancy permit designed to achieve the same goal, *i.e.*, permission to lease apartments to more than three unrelated people. However, we are not prepared to address this question, inasmuch as the record provides no basis for effective appellate review of the issue.