PHOENIX RESOURCES, INC., and Antrim Mining, Inc., Plaintiffs,

v.

DUNCAN TOWNSHIP, Robert A. Janeski, Pine Creek Headwaters Protection Group, Inc., John Doe and/or Jane Doe, Defendants.

No. 4:CV–92–0956.

United States District Court, M.D. Pennsylvania.

May 24, 1994.

Brett O. Feese, McNerney Page Vanderlin & Hall, Williamsport, PA, for plaintiffs.

Stephen J. Banik, Wellsboro, PA, for defendant Duncan Tp.

James M. Wiley, Selinsgrove, PA, for defendant Robert A. Janeski.

Gary T. Harris, Williamsport, PA, for defendant Pine Creek Headwaters.

## MEMORANDUM

McCLURE, District Judge.

### BACKGROUND:

Plaintiffs Phoenix Resources, Inc., and Antrim Mining, Inc., instituted this action under various statutory and constitutional provisions alleging that defendants had conspired to prevent plaintiffs from operating residual waste landfills in Duncan Township, Tioga County, Pennsylvania.

On January 6, 1994, plaintiffs filed a motion for approval of a consent order and agreement. The court held a hearing on the motion February 22, 1994.

Following the hearing, the court expressed its concern with the manner in which the proposed consent order and agreement appeared to require Duncan Township to abdicate its authority to regulate land use within its territorial jurisdiction, and with no apparent time limit. We therefore directed briefing on issues related to our concerns.

Plaintiffs then moved to amend their motion for approval of a proposed consent order and agreement. The motion offered modifications designed to allay the concerns expressed by the court. The motion to amend was granted by order of March 16, 1994. The revised proposed consent order and agreement attached to plaintiffs' motion to amend (record document no. 111) will hereinafter be referred to as the "proposed consent decree."

### DISCUSSION:

Defendants Janeski and Pine Creek Headwaters Protection Group, Inc. do not dispute that Duncan Township has the authority to enter into a contract and, therefore, a settlement agreement and/or a consent decree. They do contest, however, the extent of that authority and, specifically, the validity of the proposed consent decree in the instant case.

 The court initially expressed concern over the authority of the Duncan Township Supervisors to abdicate certain governmental powers and duties and to bind their successors through the proposed consent decree. We agree with defendants that these concerns continue to be implicated in the revised proposed consent decree. Also, the proposed consent decree covers a number of disputes between the parties which are not material to the instant case. The court will not issue a consent decree purporting to bind the parties to disputes not before the court, based upon fundamental principles of comity and federalism. Of course, the parties are free to enter into an agreement without approval of the court; however, the court will not give its imprimatur to the proposed settlement agreement by issuing a consent decree containing its terms.

## I. CONSENT DECREES GENERALLY

 A consent decree serves a dual function. It is an agreement between the parties reached through mutual consent, and so has the attributes of a contract. It also serves as res judicata, barring either party from bringing a separate lawsuit, and so has the attributes of a judgment. Because of its hybrid nature, a consent decree can be labelled as either a judgment or a contract depending upon the purpose for which it is being reviewed. *Local No. 93, Int'l Ass'n of Firefighters v. City of Cleveland,* 478 U.S. 501, 519, 106 S.Ct. 3063, 3073–74, 92 L.Ed.2d 405 (1986); *United States v. Fisher,* 864 F.2d 434, 439 (7th Cir.1988). Essentially, a consent decree is a settlement agreement subject to continued judicial policing. *United States v. Oregon,* 913 F.2d 576, 580 (9th Cir.1990), *cert. denied,* 501 U.S. 1250, 111 S.Ct. 2889, 115 L.Ed.2d 1054 (1991). This is so because a consent decree continues jurisdiction in a single court (the issuing court), thereby facilitating enforcement through the court's contempt powers. *Local No. 93,* 478 U.S. at 523–524 n. 13, 106 S.Ct. at 3076 n. 13. *See also In re Pearson,* 990 F.2d 653, 658 (1st Cir.1993) ("A consent decree is not simply a contract entered into between private parties seeking to effectuate parochial concerns. . . . The court stands behind the decree, ready to interpret and enforce its provisions."; citations omitted).

 Before approving a settlement and issuing a consent decree, the district court

must be satisfied that it is fair, adequate, and reasonable. *Georgevich v. Strauss,* 772 F.2d 1078, 1085 (3d Cir.1985), *cert. denied,* 475 U.S. 1028, 106 S.Ct. 1229, 89 L.Ed.2d 339 (1986); *United States v. Oregon,* 913 F.2d at 580. The district court has "considerable discretion" in doing so. *Georgevich,* 772 F.2d at 1085. *See also Pearson,* 990 F.2d at 658 ("This ongoing supervisory responsibility carries with it a certain correlative discretion."; citation omitted). Finally, the consent decree (because it is a judgment) should conform to the applicable laws. *United States v. Oregon,* 913 F.2d at 580–81.

In *Georgevich,* for example, the Third Circuit affirmed the district court's refusal to approve a consent decree in a class action suit. The district court's decision was based on objections by members of the defendant class, concerns about federal-state relations, and the changed position of the defendant class representative. 772 F.2d at 1085.

## II. PROBLEMATIC PROVISIONS

Of particular concern to the objecting defendants are paragraphs 5 and 6 of the proposed consent decree. Paragraph 5 reads:

5. The parties agree that the operation of the Antrim Flyash disposal Facility and the Rock Run Flyash Facility pursuant to Permit No. 301106 and Permit No. 301025, respectively, are preexisting, nonconforming uses and are therefore grandfathered under all township ordinances and Tioga County Ordinance No. 2–1988. The parties recognize the preexisting, nonconforming uses are subject to the doctrine of natural expansion. Therefore, the parties agree that the acreage used for residual waste landfills on the property may be expanded beyond the 13.5 acre Rock Run Facility and 135 acre Antrim Facility, but in no event shall the additional acreage exceed 176.5 acres.

Paragraph 6 reads:

6. On January 28, 1992 Duncan Township filed an appeal to the Environmental Hearing Board challenging various actions taken by PaDER [1] on December 31, 1991. Duncan Township has since voluntarily withdrawn its appeal to the Environmental Hearing Board. Duncan Township covenants not to appeal to the Environmental Hearing Board or to provide funding for an appeal to the Environmental Hearing Board for permits, transferees of permits, approval of permits or modifications to permits for beneficial uses, the Rock Run Flyash Disposal Facility, Antrim Mining Flyash Disposal Facility and the expansion permitted by this Agreement.

Duncan Township agrees that beneficial uses, the Rock Run Flyash Disposal Facility and the Antrim Flyash Disposal Facility as well as the natural expansion thereof not to exceed an additional 176.5 acres is grandfathered under any future ordinances, whether zoning or otherwise, and therefore, Duncan Township covenants not to take any action which would prohibit the operation thereof or which would materially restrict or limit the operation thereof.

Duncan Township recognizes that Hammermill Paper Company has proposed to subdivide 20 acres to convey to Antrim Mining, Inc. Located on the 20 acres are treatment ponds which are used by Antrim Mining, Inc. for its water treatment plant pursuant to the Consent Order and Agreement entered into between Antrim and PaDER which agreement is referred to in paragraph Q. Duncan Township has prevented the subdivision approval under the Tioga County Subdivision ordinance by refusing to execute the necessary documents, including but not limited to a sewage waiver, unless Antrim Mining or Phoenix Resources agree to surround the treatment ponds with a fence. Duncan Township recognizes that there are no local ordinances, county ordinances, state statutes, federal statutes, or state or federal regulations which require the treatment ponds to be fenced. Thus, Duncan Township agrees to execute all necessary documents including the sewage waiver to permit the approval of the subdivision as proposed by Hammermill Paper Company.

Duncan Township further agrees that should Antrim Mining, its successors or assigns, seek approval for any other subdi-

1. The Pennsylvania Department of Environmental Resources.

visions under the Tioga County Subdivision Ordinance then Duncan Township shall not refuse to execute the necessary documents so long as the subdivision proposal complies with the applicable subdivision ordinance and state and federal law. Further Duncan Township shall only impose conditions on the approval of the subdivision which are mandated by the applicable ordinance or state or federal law.

Motion to Amend Motion for Approval of Consent Order and Agreement and Modify Order of February 22, 1994, at 2–3, ¶¶ 6–7.

### III. MUNICIPALITY'S ABDICATION OF GOVERNMENTAL FUNCTIONS

■ Under Pennsylvania law, a municipality or an individual purporting to act on behalf of a municipality may not alter or detract from the enforcement of the Commonwealth's police powers. "... Pennsylvania courts adhere to the proposition that individuals cannot by contract abridge the police powers of the Commonwealth which protect the general welfare and the public interest." *Carlino v. Whitpain Investors,* 52 Pa.Cmwlth. 145, 415 A.2d 461, 464 (1980), *aff'd,* 499 Pa. 498, 453 A.2d 1385 (1982). *See also Helicon Corp. v. Borough of Brownsville,* 68 Pa.Cmwlth. 375, 449 A.2d 118, 120 (1982) (it is "well-settled" that police powers cannot be abridged by contract).

■ Plaintiffs cite *Gladwyne Colony, Inc. v. Township of Lower Merion,* 409 Pa. 441, 187 A.2d 549 (1963), in support of the proposition that the instant settlement agreement may be binding on Duncan Township because, by accepting the contract, its performance is ended, i.e. there is no need to enact further legislation. That case, however, may be distinguished factually from the instant case, and its holding does not appear to apply.

In *Gladwyne Colony,* an insurance company agreed to donate land to the township in return for rezoning other land owned by the insurance company. The township enacted the ordinance without special limitations or conditions. The Pennsylvania Supreme Court held the agreement valid, in part because the then-current commissioners had not bound their successors to enact any new ordinances. 187 A.2d at 551. It might also be added that the succeeding commissioners also were not bound to refrain from enacting any new ordinances.

Plaintiffs rely upon both *Carlino* and *Gladwyne Colony* for the proposition that a township may not impose conditions or limits on a particular property when those conditions or limits do not apply to the zoning district as a whole. While this is not an incorrect statement of the law (the concept is known as "spot zoning"), this principle does not apply to the proposed settlement agreement. Plaintiffs state their argument as follows:

> Moreover, no representation or stipulation in getting the rezoning can limit the effect of the township's zoning district classification. A municipality's police power cannot be subjected to a bargain which limits or conditions its zoning district regulations as to a particular property.

*[Carlino,]* 415 A.2d at 463–464.

Thus, the panel of the Commonwealth Court held that a township is prohibited from imposing limits or conditions on a particular piece of property in a zoning district as a condition of rezoning which limits or conditions are not applied to the zoning district as a whole....

Plaintiffs' Brief at 17. Actually, plaintiffs' conclusion does not follow from the quoted portion of *Carlino.* The Commonwealth Court there is referring to limits or conditions on the zoning regulations, not on the individual property. The rule of law stated by the Commonwealth Court, in simpler terms, is that an agreement in which an individual property owner gives consideration to a municipality in return for zoning regulations not applying to the individual's property is invalid. This principle, more generally stated, would be that limits on zoning power may not be abrogated by contract.

In *Carlino,* this principle applied to the rezoning of an individual piece of property in return for not building a particular access road. When a subsequent owner sought to build the access road, adjoining landowners

contended that the conditional rezoning had been violated. The Commonwealth Court sustained a demurrer because the condition placed on the rezoning was invalid as a limitation on the police power. *Carlino*, 415 A.2d at 463–64.

The situation in *Carlino* varies greatly from the facts of *Gladwyne Colony*, in which the zoning amendment was passed in return for consideration (land for a park). Thus, the contract at issue there was one for the exercise of the police power, not for a limitation on the police power. The exercise took place upon the enactment of the amendment, and it was this distinction which the Supreme Court anticipated when it noted that no further legislation was necessary to implement or carry out the contract.

Although neither cited nor discussed by any party, the opinion in *Carlino* was affirmed by the Pennsylvania Supreme Court. *Carlino v. Whitpain Investors*, 499 Pa. 498, 453 A.2d 1385 (1982). The Supreme Court's discussion of the principles at issue in the proposed consent decree is consistent with the foregoing discussion. *Id.*, 453 A.2d at 1387–1388 and 1387 n. 2.

■ Plaintiffs also argue that an exception to the general rule exists so that a contract entered into by a municipal council may bind its successors if, "at the time of its execution [the contract] is apparently fair, just and reasonable and is prompted by the necessities of the situation or in its nature is advantageous to the municipality." *Pitzer v. City of Abilene*, 323 S.W.2d 623 (Tex.Civ.App. 1959) (citing 63 C.J.S. Municipal Corporations § 987). *See also Douglas v. City of Dunedin*, 202 So.2d 787 (Fla.1967); *Carruth v. City of Madera*, 233 Cal.App.2d 688, 43 Cal.Rptr. 855 (1965). Neither party has cited a case in which the Pennsylvania courts have adopted this exception, nor has the court's research provided any such case. Based upon the explicit, adamant language of the Pennsylvania cases cited above, and the lack of adoption of any exception thereto, we can only conclude that this exception does not apply under Pennsylvania law.

In sum, then, the police powers of the Commonwealth may not be abrogated or limited through the terms of a contract, and any contractual term purporting to do so is void or voidable.

## IV. THE DOCTRINE OF NATURAL EXPANSION

■ Paragraph 5 of the proposed consent decree begins with an accurate statement of the law: that plaintiffs have already obtained permits for the operation of the two facilities, and therefore Duncan Township cannot prohibit operation of the facilities through a change in the zoning ordinances. *Longenecker v. Pine Grove Landfill, Inc.*, 117 Pa. Cmwlth. 176, 543 A.2d 215, 216 (1988). The paragraph then notes that nonconforming uses are subject to the doctrine of natural expansion, again an accurate statement of the law of Pennsylvania.

■ The doctrine of natural expansion was first promulgated by the Pennsylvania Supreme Court in *In re Gilfillan's Permit*, 291 Pa. 358, 140 A. 136 (1927). The court held:

Petitioner's business had been established at its present location long before the passing of the zoning ordinance and was actively conducted at the time the ordinance went into effect; accordingly, as the property was then used for lawful purposes, the city was without power to compel a change in the nature of the use, or prevent the owner from making such necessary additions to the existing structure as were needed to provide for its natural expansion and the accommodation of increased trade, so long as such additions would not be detrimental to the public welfare, safety and health.

*Gilfillan's Permit*, 140 A. at 137–38. There are, however, limitations to the doctrine of natural expansion: the expansion must be natural and reasonable, and must not be detrimental to the public welfare, safety and health. *Silver v. Zoning Board of Adjustment*, 435 Pa. 99, 255 A.2d 506, 507–08 (1969) (quoting *Gross v. Zoning Board of Adjustment*, 424 Pa. 603, 227 A.2d 824, 826 (1967)). *See also Warner Co. v. Zoning Hearing Board of Tredyffrin Township*, 148 Pa. Cmwlth. 609, 612 A.2d 578, 582–83 (1992) (doctrine of natural expansion did not bar

township from enacting ordinance which established reasonable setback requirements on quarrying activity, despite prior use of site as quarry), *allocatur denied,* 533 Pa. 654, 624 A.2d 112 (1993) (table).

When the land use in question is the management or disposal of solid waste, most local ordinances are preempted by the Solid Waste Management Act, 35 Pa.Stat. Ann. §§ 6018.101 et seq. *Longenecker,* 543 A.2d at 216. However, the Solid Waste Management Act does not prohibit "appropriate" zoning regulations, i.e. regulations which meet certain procedural requirements and which do not impose "stricter engineering or geological standards than those provided for by state regulations." *Id.* (citing *Sunny Farms, Ltd. v. North Codorus Township,* 81 Pa.Cmwlth. 371, 474 A.2d 56 (1984); *Kavanagh v. London Grove Township,* 33 Pa. Cmwlth. 420, 382 A.2d 148 (1978), *aff'd,* 486 Pa. 133, 404 A.2d 393 (1979), *appeal dismissed,* 444 U.S. 1041, 100 S.Ct. 725, 62 L.Ed.2d 726 (1980)).

The court has two major areas of concern with paragraph 5 of the proposed settlement agreement. First, it is not at all clear that expansion of a landfill as described by the parties is a reasonable and natural expansion. The doctrine of natural expansion permits a landowner "to extend the *scope* of his nonconforming use *over the portion of his lot devoted to his lawful business purpose at the time of the ordinance.*" *Piecknick v. South Strabane Township Zoning Hearing Board,* 147 Pa.Cmwlth. 308, 607 A.2d 829, 835 (1992) (emphasis in original; citing *Appeal of Peirce,* 384 Pa. 100, 119 A.2d 506, 509 (1956)). The Commonwealth Court added, "In *Peirce,* it was clear that the portion of the lot on which the landowner sought to expand his garage had been 'an integral part of the property used in the furtherance of the nonconforming purpose.'" *Piecknick,* 607 A.2d at 835 (quoting *Peirce,* 119 A.2d at 510).

While it is true that a use of land such as a quarry may expand to cover the whole lot because that is the nature of such a business, *cf. Cheswick Borough v. Bechman,* 352 Pa.

79, 42 A.2d 60 (1945), and use of land as a landfill can be said to be analogous to this type of use,[2] plaintiffs in the instant case are limited to an area for which they have received permits from the Department of Environmental Resources (a total of 148.5 acres). That is, plaintiffs cannot expand their use to cover their entire properties because of the permitting limits, and a claim that their non-permitted land is currently devoted to use as landfill would be questionable.

The second area of concern to the court is that, by conceding that the additional land is subject to the doctrine of natural expansion, the present Supervisors of Duncan Township would be abridging the authority to regulate the additional land purportedly subject to the doctrine, i.e. the additional 176.5 acres. By making this additional realty subject to natural expansion of the current operation of the landfill, the property would be subject to the Solid Waste Management Act. As noted above, this Act preempts most local land-use regulation, and regulation which is not preempted is subject to severe restrictions. The practical effect of conceding the use of the additional acreage is to bind the Township to this limited regulation, thereby contractually limiting the authority of the Township to exercise the police powers, contrary to the authority set forth above.

### V. ADDITIONAL CONCERNS

The concerns set forth in the preceding section regarding paragraph 5 also apply to paragraph 6 of the proposed consent decree. That paragraph also would restrict the exercise of the police powers by Duncan Township over the additional acreage, as outlined above.

Paragraph 6 also brings before the court several matters which are not material to the instant matter. For instance, in the first section of paragraph 6, Duncan Township agrees to forebear any appeal to the Environmental Hearing Board of specific actions taken by the Department of Environmental Resources on December 31, 1991. This agreement by the current Supervisors not

---

**2.** The analogy being that these types of businesses use or consume the land itself, as opposed to placement of a business such as a garage on the land.

only implicates concerns that they are binding by contract any future Supervisors who may wish to undertake such an appeal, it implicates concerns of comity and federalism. It would be improper for this court, through a consent decree, to preclude Duncan Township from taking appeals to state administrative and judicial bodies when the matters concerned are properly brought in those fora.

Also discussed in paragraph 6 is subdivision of properties under the Tioga County subdivision ordinance. This matter also is not properly before this court.

In their briefs, the parties engage in a lengthy exchange concerning the improper use of power. Defendants Janeski and Pine Creek Headwaters Group complain that plaintiffs are wielding their economic might and threat of protracted litigation to force a bad settlement agreement from Duncan Township. Plaintiffs complain that defendants have wielded unfair political authority to interfere with plaintiffs' business operations. These superfluous pejoratives have little to do with the legal questions before the court[3] and will not be considered further.

Finally, at the February 22, 1994, hearing on the proposed settlement agreement, the court indicated that the matters before it were limited, and that matters outside the scope of the pleadings would not be considered. It was our intention, therefore, to refrain from reviewing decisions of the Department of Environmental Resources and the federal Environmental Protection Agency. We continue in that intention, despite plaintiffs' invitation to the contrary, Plaintiffs' Brief at 1 n. 1, and despite the fact that the proposed consent decree is intended to settle a number of disputes between the parties, of which the instant case is but one. "A consent decree should spring from and serve to resolve a dispute within the court's subject matter jurisdiction. Furthermore, consistent

with this requirement, the decree must 'com[e] within the general scope of the case made by the pleadings,' [*Pacific R. Co. v. Ketchum*, 101 U.S. 289, 297, 25 L.Ed. 932 (1880) ], and must further the objectives of the law upon which the complaint was based, . . ." *Local No. 93, supra,* 478 U.S. at 525, 106 S.Ct. at 3077 (further citations omitted). It is not the province of this court to resolve all of the parties' disputes, only the dispute before us.

## VI. CONCLUSION

The proposed consent decree presents a number of concerns to the court which render it inappropriate for court approval. These include the possible abrogation of police powers through the terms of a contract by Duncan Township. This abrogation would take place through concession of legal positions which could be binding on future Supervisors and directly under the terms of the proposed consent decree. Also, matters not before the court are presented in the proposed consent decree, leading to concerns of comity and federalism.

For these reasons, the motion for approval of consent order and agreement, as amended, will be denied. For administrative purposes, the "objections" filed by defendant Janeski and various citizens of Duncan Township, not parties to the instant action, will be denied. An appropriate order shall issue.

This memorandum and order are limited to disposition of the motion for approval of a proposed consent decree. Nothing in this memorandum and order should be considered as a ruling on the merits of the issues presented by the proposed consent decree.

## ORDER

For the reasons stated in the accompanying memorandum, **IT IS ORDERED THAT:**

---

**3.** Defendant Janeski, for example, contends that he is being subjected to a heavy burden for an individual litigant because of the expense of litigation with corporate entities. Despite these entreaties, defendant Janeski did not file a motion to dismiss based upon legislative immunity, which arguably could apply, nor has he filed a motion for judgment on the pleadings. An individual litigant who has avenues of redress should

not complain when he fails to take advantage of those avenues.

Plaintiffs, for their part, answer their own complaints. They are correct that property owners have the right under the law to be free from unreasonable government interference. This right is protected and exercised by presenting their grievance to a court of law, and they have done so.

1. The motion (record document no. 96) by plaintiffs Phoenix Resource, Inc., and Antrim Mining, Inc., as amended (record document no. 111), for approval of consent order and agreement is denied.

2. The objections (record document no. 98) by defendant Janeski to the proposed consent decree are denied.

3. The objections (record document no. 99) by forty-four residents of Duncan Township are denied.

4. A telephone conference call for the purpose of discussing the status of the case and scheduling matters shall be held on Monday, June 13, 1994 at 9:00 a.m. Counsel for plaintiffs shall initiate the call. Chambers telephone number is 717–323–9772.