607 A.2d 829

**Fred and Dorothy PIECKNICK, Appellants,**

v.

**SOUTH STRABANE TOWNSHIP ZONING HEARING BOARD, Appellee.**

Commonwealth Court of Pennsylvania.

Argued Feb. 6, 1992.

Decided April 15, 1992.

2.  *As amended,* December 19, 1990, P.L. 1227, § 1, effective in 180 days.

3.  Act of December 19, 1990, P.L. 1227, § 1, effective immediately.

310

Peter M. Suwak, for appellants.

Frank A. Conte, for appellee.

Before DOYLE and KELLEY, JJ., BARRY, Senior Judge.

DOYLE, Judge.

This is an appeal by Fred and Dorothy Piecknick from an order of the Court of Common Pleas of Washington County affirming a decision of the Zoning Hearing Board of South Strabane Township (Board) denying the Piecknicks permission to build a garage on their property.

The Piecknicks own a lot in South Strabane Township located in an R–2 (suburban residential) zoning district on which they operate a towing and salvage business as a preexisting nonconforming use. They have operated their towing and salvage business on the lot since before 1960, the year of the enactment of the Township's zoning ordinance.

The Piecknicks' lot measures 390 by 135 feet and is presently occupied by two structures. One is the Piecknicks' home, located on the back portion of the lot, and the

other is a garage measuring 35 by 55 feet, located on the front portion of the lot, which the Piecknicks use in connection with their business and which was present on the lot prior to 1960. Various other areas of the lot are used to store junk cars.

In June 1990, the Piecknicks sought permission from the Township building inspector to build a new garage measuring 38 by 65 feet which would have adjoined the existing garage. The building inspector denied their application and the Piecknicks appealed to the Board. The Board affirmed the inspector's decision on August 10, 1990, finding that the proposed garage was a 128% expansion of the ground area of their nonconforming use and that Section 18.2 of the South Strabane Township Zoning Ordinance (Ordinance)[1] prohibited enlargement of nonconforming buildings, structures or land beyond 75% of the ground area of such building, structure or land which existed as a nonconforming use on the date of the enactment of the ordinance.

The Piecknicks filed another application to build a garage with the Township in July 1990.[2] This time, the proposed garage was to share a common wall with the existing garage, be twenty feet high, and measure 36 by 40 feet. These dimensions would bring the proposed garage within the 75% expansion limitation.[3] The portion of the lot on which the Piecknicks proposed to construct the garage is presently used to store junk cars. The application was again denied and the Piecknicks appealed the denial to the Board.

The Board treated the application as a request for a "special exception to expand a nonconforming use." A hearing was held on August 29, 1990 at which time the

1. Zoning Ordinance No. 5 of 1977, *as amended.*

2. The Piecknicks were apparently aware of the disposition of their first application before the Board issued its written denial of that application on August 10; they filed their second application, therefore, actually prior to the written decision on the first application.

3. We assume by this finding that the Board meant that the new garage would be within a 75% expansion of the area encompassed by the old garage.

Board took testimony on the Piecknicks' application and, after public deliberation and a vote taken at the end of the hearing, informed the Piecknicks that their application was denied.

A written order and opinion was issued by the Board on October 8, 1990, denying the application on the grounds that the construction would be the expansion of a nonconforming use, that such expansion would adversely impact upon the health, safety and general welfare of the surrounding neighborhood, and that the construction would "violate the township ordinance which prohibited the construction of accessory buildings in the front yard of residential property." Opinion and Order of October 8, 1990 at page 2. The decision was mailed to the Piecknicks on either October 12 or October 13, 1990. The order and opinion was signed and drafted by J. Scott Leckie, chairman of the Board, but was not signed by either of the other two Board members who had been present at the hearing.

The Piecknicks appealed the Board's decision to the common pleas court, which, without taking any additional evidence, affirmed the decision of the Board. This appeal followed.

The Piecknicks raise several issues on appeal. First, the Piecknicks argue that the Board failed to inform them of the decision denying their application in a timely manner and that such failure results in a deemed approval under the Pennsylvania Municipalities Planning Code (MPC).[4] The Piecknicks also contend that the decision rendered by the Board violated the MPC, and hence was invalid, because it was not reached by a quorum of the Board, was signed by only one member of the Board and because there was no indication that the findings in the opinion were reviewed or approved by the other members of the Board. In connection with this argument, the Piecknicks allege that the Board's decision was not reached at a formal public meeting and that this violates the Sunshine

4. Act of July 31, 1968, P.L. 805, *as reenacted and amended,* 53 P.S. §§ 10101–11201.

Act.[5] Finally, the Piecknicks argue that the Board improperly applied the setback requirements of the zoning ordinance in denying the application and that the Board's decision deprives them of the natural expansion of a preexisting nonconforming use to which they are entitled. We will address these arguments seriatim.[6]

Section 908(10) of the MPC, 53 P.S. § 10908(10), pertinently provides as follows:

A copy of the final decision or, where no decision is called for, of the findings shall be delivered to the applicant personally or mailed to him not later than the day following its date.

The Piecknicks were notified personally that their application was denied on the night of the hearing, August 29, 1990. The written decision, however, was not issued until October 8, 1990 and was mailed to the Piecknicks on October 12th or 13th. The Piecknicks argue that this violated Section 908(10) of the MPC and that this failure should result in a deemed approval of their application. This assertion is without merit, however, because we have consistently held that Section 908(10) is merely directory rather than mandatory and the Board's failure to follow strictly this section does not require a decision in the Piecknicks' favor. *See MGH Enterprises Appeal,* 85 Pa.Commonwealth Ct. 68, 480 A.2d 394 (1984); *Vacca v. Zoning Hearing Board of Dormont,* 82 Pa.Commonwealth Ct. 192, 475 A.2d 1329 (1984).

The Piecknicks next argue that the decision issued by the Board was not approved by a quorum of the Board and that the findings and conclusions contained in the opinion do not reflect the rationale of the entire Board because the written decision was not reviewed by all members of the Board who participated in the decision. The Piecknicks further main-

**5.** Act of July 3, 1986, P.L. 388, 65 P.S. §§ 271–286.

**6.** In a zoning appeal where the trial court fails to take any additional evidence, our scope of review is limited to a determination of whether the zoning hearing board abused its discretion or committed an error of law. *Valley View Civic Association v. Zoning Board of Adjustment,* 501 Pa. 550, 462 A.2d 637 (1983).

tain that the decision is invalid because it was signed by only one member of the Board. The Piecknicks claim that these defects result in a deemed approval pursuant to Section 908(9) of the MPC, 53 P.S. § 10908(9). Section 908(9) pertinently provides as follows:

> The board ... shall render a written decision or, when no decision is called for, make written findings on the application within 45 days after the last hearing before the board.... Where the application is contested or denied, each decision shall be accompanied by findings of fact and conclusions based thereon together with the reasons therefore.... Where the board fails to render the decision within the period required by this subsection ... the decision shall be deemed to have been rendered in favor of the applicant....

And, Section 906(a) of the MPC, 53 P.S. § 10906(a), provides that "[f]or the conduct of any hearing and the taking of any action, a quorum shall be not less than a majority of all the members of the board...."

In this case, the decision to deny the Piecknicks' application was made at the public hearing on August 29, 1990. All three regular members and two alternate members of the Board were present at the meeting.[7] This fulfills the quorum requirements of the MPC as all of the regular members of the Board were present for the action that was taken.

▇ The Piecknicks' assertion that the decision rendered by the Board is invalid because it was signed only by the chairman is also without merit. Section 908(9) does not indicate who must sign a decision, or even that a decision must be signed at all. We have consistently held that a

---

7. *See* Section 20.1.2 of the Ordinance which provides that the membership of the Board shall consist of three regular members. Section 20.1.3 of the Ordinance provides that the Township's Supervisors may appoint at least one but not more than three residents of the Township to serve as alternate members of the Board. This practice is specifically envisioned by Section 903(b) of the MPC, 53 P.S. § 10903(b), which provides that "The governing body may appoint by resolution at least one but no more than three residents of the municipality to serve as alternate members of the board...."

board's failure to sign the decision does not invalidate the decision. *See Vacca* (decision signed by board members 55 days after last hearing not untimely); *Hill v. Lower Saucon Township Zoning Hearing Board,* 72 Pa.Commonwealth Ct. 381, 456 A.2d 667 (1983) (decision signed only by solicitor not rendered a nullity); *Packard v. Commonwealth,* 57 Pa.Commonwealth Ct. 322, 426 A.2d 1220 (1981) (failure of majority of Board members to sign decision not fatal to decision).

■ The Piecknicks are also incorrect when they suggest that the Board's decision is invalid because the written decision was not reviewed by the other Board members. Section 908(9) of the MPC merely requires that a board render a written decision or, when no decision is called for, make written findings on the application. In the case at bar, the Board was required to render a decision. It did so on August 29, 1990. And, the decision was clearly reached after due deliberation by the entire Board at that meeting. Further, there is nothing in the record to suggest that the chairman of the Board, who drafted the decision, somehow usurped the decision making power of the Board and substituted his own judgment. None of the other Board members complained of the Chairman's written rendition of the Board's deliberations which were made in public with the Piecknicks in attendance. Furthermore, there is nothing anywhere in Section 908, nor elsewhere in the MPC, which suggests that the required findings of fact and conclusions of law must be reviewed by all members of the Board participating in the decision.

■ Moreover, even if the written findings and conclusions were somehow deficient, the Piecknicks would still not be entitled to a deemed approval because of this defect. The deemed approval provision of Section 908(9) applies only to an untimely decision. *See Gaster v. Township of Nether Providence,* 124 Pa.Commonwealth Ct. 595, 556 A.2d 947 (1989); *A.Z.J.Z., Inc. v. Township of Springfield,* 36 Pa.Commonwealth Ct. 161, 387 A.2d 675 (1978). The Board in the instant case rendered its written *decision* on

October 8, 1990, within 45 days of the August 29th hearing on the matter. The decision was thus timely. Section 908(9) does not require that the decision be accompanied by findings and conclusions made within 45 days, only that written findings and conclusions be made. *Gaster.*

■ The Piecknicks' final procedural objection concerns the Board's alleged noncompliance with the Sunshine Act. The Piecknicks assert that the Board's deliberation and decision was not taken at a formal meeting open to the public and that it is therefore void under Section 4 of the Sunshine Act.[8] This assertion is, however, contrary to the facts of record before us. The Board members deliberated and voted to deny the Piecknick's application at a public meeting on August 29, 1990. The fact that the *written* decision was not voted on and approved at a public meeting is of no import because the formal action required to be taken at a public meeting by the Sunshine Act is the actual vote on the decision. *Glennon v. Zoning Hearing Board of Lower Milford Township,* 108 Pa.Commonwealth Ct. 371, 529 A.2d 1171 (1987); *Pae v. Hilltown Township Zoning Hearing Board,* 35 Pa.Commonwealth Ct. 229, 385 A.2d 616 (1978).

■ We now reach the merits of the Piecknicks' appeal. The Piecknicks first contend that the Board erred in its interpretation of Section 17.4.3 of the Zoning Ordinance.[9]

Section 17.4.3 of the Ordinance provides as follows:

8. Section 4 of the Sunshine Act, 65 P.S. § 274, requires that official action and deliberations by a quorum of the members of an agency shall take place at a meeting open to the public. We have held that the Sunshine Act applies to the actions of a zoning hearing board. *Appeal of Emmanuel Baptist Church,* 26 Pa.Commonwealth Ct. 427, 364 A.2d 536 (1976).

9. The Piecknicks also contest the conclusion of the *trial court* that their plan violated the height and buffer and landscaping requirements of the ordinance. *See* Sections 17.6 and 17.5 of the Ordinance. We are not reviewing the trial court's conclusions in this proceeding, however, because, where the trial court fails to take any additional evidence, our scope of review is limited to determining whether the *zoning hearing board* abused its discretion or committed an error of law. *See Valley View.* We also note that, where the trial court does

> Accessory structures shall not be constructed within any front yard or side yard.... Where an owner of residential property desires to construct, for the use of the residents, a garage ... such use shall be a use by right, provided that all applicable building and setback requirements of the Zoning Ordinance are met.

The Board concluded that the proposed plan would place the garage in the front yard of the Piecknicks' property and that this was prohibited by Section 17.4.3. The Board maintains that the front yard of the Piecknicks' property extends from the street line all the way to the Piecknicks' residence located in the rear portion of the lot. This means that the existing garage, as well as the proposed garage, would both be located in the front yard.

To begin with, we do not believe that Section 17.4.3 is applicable to the Piecknicks' application. Section 17.4.3 deals with "accessory structures." The Ordinance defines an "accessory structure" as "[a] subordinate building, the use of which is customarily incidental to that of the principal building and is used for an accessory use, and is located on the same lot." Section 4.2 of the Ordinance. A "primary [principal] building" is defined as "[a] building in which is located the principal use of the lot on which it is located." Section 4.2 "Accessory use" is defined as "[a] use conducted on the same lot as a principal use to which it is related; a use which is clearly incidental to, and is customarily found in connection with a particular principal use." Section 4.2.[10]

■ By its decision, the Board seems to suggest that the Piecknicks' principal use is their residence located in the rear of the lot. If this is so, then the proposed garage, which would be used in connection with their business, is

not take any additional evidence, its role is, likewise, to review the findings and conclusions of the zoning hearing board. *See* Section 1005–A of the MPC, 53 P.S. § 11005–A. Because the trial court here failed to take additional evidence, it was not empowered to make additional findings. Thus, the findings made by the trial court in the instant matter are irrelevant to our disposition of the case.

**10.** "Principal use" is not defined in the Ordinance.

clearly not a use incidental to the principal use, and so, is not an accessory building. Even if the Board were to maintain that the towing and salvage business was the principal use, it is clear that the proposed garage would not be incidental to this use, but would be rather an integral part of this principal use and thus a principal building. Although we conclude that the proposed garage is not an "accessory building" and that Section 17.4.3 is not applicable, we note that Section 17.4.4 also prohibits the construction of "principal buildings" in the front yard of a lot. We must, therefore, address the Board's interpretation of the Ordinance's definition of "front yard."

As mentioned above, the Board concluded that the front yard of the Piecknicks' lot extended from the street line all the way to the Piecknicks' residence located in the rear portion of the lot. We cannot agree with this interpretation of the Ordinance. Although at first glance it would appear that both garage buildings would be located in the front yard under a common understanding of what a "front yard" is, in this instance the term "front yard" is defined in Section 4.2 of the Ordinance itself. It provides:

> the yard extending along the full length of the front lot line and being the minimum horizontal distance between the front lot line (or street line) and the building setback line (*or* the building or any projection thereof, other than the steps). (Emphasis added.)

Section 4.2 also defines a "building" as:

> A structure or appendage to a structure which: is permanently affixed to the land; has one or more floors or stories; and is bonded [sic] by either lot lines or yards.... A building ... may be used for residential, commercial, industrial, public or semi-public purposes.

Finally, Section 4.2 defines "building setback line" as

> An established line within a property defining the minimum required distance between the face of any structure to be erected, and an adjacent right-of-way, or street line....

Section 6.6 of the Ordinance establishes the front setback for R–2 zones at 40 feet.

The definition of front yard contained in Section 4.2 is capable of several different interpretations. For example, the definition could be read to mean that the "front yard" is equal to the distance between the front lot line and the building setback line (which would be 40 feet), *or* the distance between the front lot line and the building, whichever *is greater.* The definition could also mean that the front yard *is the lesser* of these two distances.

�no  When faced with an ambiguous provision of a zoning ordinance, we must construe the terms in favor of the property owner and against any implied extension of restrictions. *See Salisbury Township Appeal,* 114 Pa.Commonwealth Ct. 493, 539 A.2d 48 (1988); Section 603 of the MPC, 53 P.S. § 10603. With this principle in mind, we conclude that the definition provides that the front yard is the minimum distance between either the front lot line and the building or the front lot line and the building setback line. There is nothing in the Ordinance which requires that the "building" to which the distance is to be measured must be a residence, as suggested by the Board, and therefore, the Piecknicks' existing garage qualifies as a "building" for purposes of determining the front yard. The building set back for the R–2 district in which the Piecknicks' property is located is 40 feet. *See* Section 6.6 of the Ordinance. Thus, the front yard of the Piecknicks' lot is the lesser of 40 feet or the distance between the front lot line and the existing garage.

Although the Board failed to make any findings concerning the distance between the existing garage and the front lot line of the property, we do know from the diagram attached to the Piecknicks' application that the proposed garage is to adjoin the existing garage on the side, not to the front. Because the "front yard" will be at most the distance between the front lot line and the existing garage, the proposed garage, which would adjoin the existing garage on the side, cannot lie in the "front yard" as defined in

the Ordinance. We can thus conclude that the proposed garage, not being within the "front yard" of the lot as defined in the Ordinance, does not violate the Ordinance and therefore no dimensional variance is necessary.

■ We now reach the Piecknicks' argument concerning their nonconforming use. The Piecknicks contend that their proposed construction is the reasonable expansion of a preexisting nonconforming use to which they are entitled, and rely on our Supreme Court's decision in *Peirce Appeal,* 384 Pa. 100, 119 A.2d 506 (1956).

In *Peirce,* the landowner operated an iron working, welding and automobile repair business as a preexisting nonconforming use. A garage used in the business occupied an area of 800 square feet and a further 725 square feet of the lot was used for storage purposes. The landowner sought a permit to construct an addition to the existing garage which addition would enclose 425 square feet of the 725 square feet previously used for storage. The zoning hearing board denied the permit on the grounds that the local ordinance prevented the extension of a nonconforming use by way of structural alterations to a building housing such a use.

The Supreme Court reversed holding that it was within the right of the landowner to enclose the open-air portion of his operation of the nonconforming use within a building. The Supreme Court also held, however, that a landowner has a right only to extend the *scope* of his nonconforming use *over the portion of his lot devoted to his lawful business purpose at the time of the ordinance.* See *Peirce,* 384 Pa. at 105, 119 A.2d at 509. In *Peirce,* it was clear that the portion of the lot on which the landowner sought to expand his garage had been "an integral part of the property used in the furtherance of the nonconforming purpose." *Id.,* 384 Pa. at 106, 119 A.2d at 510.

■ We are unable to apply *Peirce* here because critical findings were not made by the Board. While it is clear from the record that the Piecknicks began the general

operation of their nonconforming business use (towing and salvage) prior to the enactment of the Township's zoning ordinance in 1960, the record is devoid of any evidence indicating exactly what spatial portion of the property was occupied by that nonconforming use. If the expansion the Piecknicks desire is over a portion of the property that had already been devoted to the nonconforming use prior to 1960, the construction of a garage as a shelter for that use would be within the "natural expansion doctrine" and the Piecknicks may construct their garage without obtaining a variance.[11] *See Jenkintown Towing Service v. Zoning Hearing Board of Upper Moreland Township*, 67 Pa.Commonwealth Ct. 183, 446 A.2d 716 (1982); *O'Kane v. Zoning Hearing Board of Haverford Township*, 136 Pa.Commonwealth Ct. 188, 582 A.2d 716 (1990). In fact, if the Piecknicks seek to build the garage on property that has been a part of the area used in the nonconforming-business use since prior to 1960, they are not seeking an "expansion" of the nonconforming use at all.[12] If, however, the expansion

**11.** The "natural expansion doctrine" provides that, to a certain extent, a nonconforming use can expand as a matter of right. *Chartiers Township v. W.H. Martin, Inc.*, 518 Pa. 181, 542 A.2d 985 (1988). This right is limited, however, and the proposed expansion must not be detrimental to the public health, safety or welfare. *Silver v. Zoning Board of Adjustment*, 435 Pa. 99, 255 A.2d 506 (1969). The nonconforming use is still required to comply with all dimensional, space, lot size, design, structural or aesthetic restrictions imposed by the ordinance or obtain a variance therefrom. *Miller & Son Paving, Inc. v. Wrightstown Township*, 499 Pa. 80, 451 A.2d 1002 (1982).

**12.** *Merion Park Civic Association, Inc. v. Zoning Hearing Board of Lower Merion Township*, 109 Pa.Commonwealth Ct. 38, 530 A.2d 968 (1987), suggests that if the area of the property on which the landowner seeks to build is already used in conjunction with the nonconforming use, then construction on it which relates to the nonconforming business is not an expansion of that nonconforming use.

In *Merion Park*, the landowner operated a greenhouse business as a nonconforming use. The landowner wanted to raze one of his greenhouses and replace it with an employee parking lot. The township denied his application, asserting, *inter alia*, that his proposed action represented a *change in uses*. We held that because the new parking lot would be located on an area already involved in the nonconforming use and because it would operate in connection with the greenhouse business, the proposed parking lot was not a change in use but was merely accessory to the nonconforming use. In a footnote, we

is to occur over an area of the property not previously used in furtherance of the nonconforming use but is reasonably necessary to accommodate the requirements of the natural growth of the business, the Piecknicks must obtain a variance before they can build. *Jenkintown Towing.*

In either case, the lack of evidence concerning what area of the property was occupied by the nonconforming use prior to 1960 prevents us from rendering a meaningful review of the Board's decision. If the area in question, that portion of the lot over which the garage will be built, has not been used in furtherance of the nonconforming use, then the Piecknicks' application is properly treated as a variance. The Board, however, made no findings concerning the factors necessary to obtain a variance and there is, therefore, nothing for us to review in this regard. *See Jenkintown Towing.* If, on the other hand, the area in question has been used as an integral part of the nonconforming use, the Piecknicks could proceed without a variance.[13] We cannot assume, however, that this is in fact the case.

We must also comment on the Board's findings concerning the negative impact of the Piecknicks' proposed construction on the health, safety and welfare of the neighbor-

noted that the case did not involve an expansion of a nonconforming use but only involved an expansion of the parking facility on land already used for another aspect of the nonconforming use. The footnote defined an expansion of a nonconforming use as an expansion of the *area of property* devoted to overall business activities.

Therefore, if the Piecknicks had already been using the area in question as part of the nonconforming use, building a garage on this same land could be at best a *change in use or a new use,* but, under the definition in *Merion Park,* it would not be an *expansion* of the area of property devoted to overall business activities.

13. As noted at page 831, supra, the Board treated the Piecknicks' application as one for a special exception. The Board was apparently applying Section 17.4.3 of the Ordinance which provides that "[a]ccessory structures shall not be constructed within any front yard.... Such structures may be erected in the rear yard when authorized as a Special Exception." As we have concluded that an "accessory structure" is not involved here, this special exception procedure is inapplicable.

hood and on several findings contained within the trial court's opinion.

The Board made the following relevant findings of fact and conclusions of law.

### FINDINGS OF FACT

6. The Board finds as a fact that the applicants' towing and auto salvage business is not suitable to the neighborhood in which it is located. The neighborhood is basically residential in character. The business is a source of snakes and rats which is of substantial concern to some of the adjoining landowners. Also, the business is growing to the point where junked vehicles have to be piled up on the access road in the middle of the lot and all the way to its outer perimeter. With the accumulation of junked vehicles and weeds growing around them, the junkyard is an eyesore which reduces the property value of the adjoining land. The business is outgrowing the lot on which it is located and this portends that its deleterious effect on the adjoining land will continue to increase.

7. The junkyard depresses the value of the adjoining land.

8. Growth of this non-conforming use will further adversely impact on the health, safety and general welfare of the neighborhood.

### CONCLUSIONS OF LAW

2. The Board also concludes the [sic] allowing the garage to be built will promote the further growth of this towing and auto salvage business and this will result in a corresponding further negative impact in terms of the use and enjoyment of the neighboring land as well as land values.

The Board's findings and conclusions clearly indicate that it concentrated on the effect the *entire business* had on the health, safety and welfare of the adjoining properties. The impact of the entire business should not have been an issue

before the Board; and there was no evidence that construction of the *garage* would adversely affect the neighborhood. Therefore, we must reverse the Board to the extent that it denied the application on the basis of the general welfare of the neighborhood.

Finally, we address the trial court's finding that "the construction was not to be located in the backyard area of the property...." Opinion of trial court at 5. By implication, the trial court has thus held that the garage was to be located in the front yard. Because we have concluded that the proposed construction was not to be located in the front yard, we must reverse the trial court to the extent that its findings hold otherwise.

Accordingly, we will reverse in part and vacate in part and remand this matter to the trial court. The court may in its discretion take evidence or remand to the Board to take evidence to reach the essential issues involved in this appeal.

## ORDER

NOW, April 15, 1992, the order of the Court of Common Pleas of Washington County in the above-captioned matter is hereby reversed in part and vacated in part and this case is remanded for further proceedings consistent with this opinion.

Jurisdiction relinquished.