647 A.2d 279

**In re Appeal of LESTER M. PRANGE, INC., t/d/b/a Prange's 222 Service Center from the Decision of the Zoning Hearing Board of Strasburg Township, Lancaster County, Pennsylvania.**

**Appeal of LESTER M. PRANGE, INC., Appellant.**

Commonwealth Court of Pennsylvania.

Argued April 15, 1994.

Decided Aug. 17, 1994.

628

David L. Williams, for appellant.

Elizabeth A. Hambrick–Stowe, for appellee.

Before CRAIG, President Judge, NEWMAN, J., and DELLA PORTA, Senior Judge.

DELLA PORTA, Senior Judge.

Lester M. Prange, Inc. (Prange) appeals from the order of the Court of Common Pleas of Lancaster County which affirmed the decision of the Strasburg Township Zoning Hearing Board (Board) denying Prange's application for a special exception and a variance, and its appeal from an enforcement notice of zoning violations. The issues raised on appeal are: (1) whether Prange established the existence and extent of a prior nonconforming use of a lot on which it proposes to erect a building; (2) whether such use, even if established, had been abandoned; and (3) whether Prange is entitled to expand its nonconforming use of one lot onto another adjoining lot by special exception or by variance.

On February 11, 1982, Prange purchased from Jacob and Ruth Ann Esh approximately 3.1 acres of land located at the intersection of Beaver Valley Pike and White Oak Road in Strasburg Township (Township), Lancaster County. Prange's land consists of two separate adjoining tracts: a .46–acre tract (Lot No. 1) and a 2.67–acre tract (Lot No. 2). Prange's land is located in the R–Rural District as shown on the zoning map of the Township. When the Township enacted The Strasburg Township Zoning Ordinance of 1972 (Zoning Ordinance), *as*

*amended,* these two lots were part of a larger tract of land owned by Elam A. Leaman. Lot No. 1 was created when Leaman subdivided his tract in 1975. Following the subdivision, Leaman sold Lot No. 1 to the Eshes. Thereafter in 1978, Leaman sold the remainder of the tract containing Lot No. 2 to Dwight E. and Barbara Wagner who then subdivided it into six lots. In 1978 or 1979, the Eshes acquired from the Wagners an equitable interest in Lot No. 2.

Prior to the enactment of the Zoning Ordinance in 1972, Leaman used the portion of his land, now referred as Lot No. 1, for a service garage with some car sales. Prange currently uses Lot No. 1 as a gas station, mini-market, car repair garage, repair garage and parking lot for its tractor trailers. It is undisputed that the use of Lot No. 1 for such purposes is permitted as a nonconforming use under Section 1800 of the Zoning Ordinance. At the time of the enactment of the Zoning Ordinance, only one building containing 3,600 square feet existed on Lot No. 1. Subsequently, the Eshes made two additions to the building on Lot No. 1 in 1977–1978, increasing the total square footage to 6,140 square feet.

On February 22, 1989, pursuant to Section 1801 of the Zoning Ordinance, Prange filed an application with the Board for a special exception and a variance to expand the nonconforming use, proposing to erect on Lot No. 2 an additional building containing approximately 5,250 square feet to be used for servicing large trucks. After hearings, the Board denied the application and Prange appealed to the trial court. On August 22, 1989, the Township issued an enforcement notice to Prange, citing violations of Sections 1001 and 1801 of the Zoning Ordinance in using Lot No. 2 for parking and servicing trucks without the Township's approval for expansion of a nonconforming use. Thereafter, the trial court remanded the matter to the Board for supplemental hearings on the existence and extent of the prior lawful nonconforming use.[1]

1. The parties stipulated that the testimony presented at the supplemental hearings upon remand would also be used to resolve the propriety of the enforcement notice issued by the Township regarding the use of Lot No. 2.

Prange subsequently amended its application to include a request to substitute a nonconforming use for another nonconforming use pursuant to Section 1801.3.

After the supplemental hearings, the Board again denied the application, concluding that (1) Prange failed to establish the existence of a nonconforming use of Lot No. 2; (2) even if on or before 1972, Lot No. 2 was used to some extent in the operation of the business on Lot No. 1, such use has since been abandoned for a period of more than twelve months; (3) Prange had no right to expand its nonconforming use of Lot No. 1 onto Lot No. 2; and (4) the proposed use would have a detrimental effect on the community. The Board further denied Prange's appeal from the enforcement notice. On appeal, the trial court affirmed the Board's decision.[2]

Prange first contends that it established a nonconforming use on Lot No. 2 and challenges the Board's findings that Elam A. Leaman who owned the larger tract containing Lot No. 1 and Lot No. 2 from 1952 to 1975 put up a fence in the ditch separating the two lots and that Lot No. 1 was used for selling cars and car repair work, and Lot No. 2 was used as a pastureland for grazing sheep.

In order to establish a prior nonconforming use, the landowner must present objective evidence demonstrating that the subject land was devoted to such use at the time of the enactment of the zoning ordinance. *R.K. Kibblehouse Quarries v. Marlborough Township Zoning Hearing Board,* 157 Pa.Commonwealth Ct. 630, 630 A.2d 937 (1993). The burden of proving the existence or extent of a nonconforming use rests on the property owner who would claim the benefits of the rights accorded the property with that status. *Overstreet v. Zoning Hearing Board of Schuylkill Township,* 49 Pa.Commonwealth Ct. 397, 412 A.2d 169 (1980).

---

**2.** This Court's scope of review in zoning cases, where, as here, the trial court did not take additional evidence, is limited to determining whether the board committed an error of law or a manifest abuse of discretion. *De Cray v. Zoning Hearing Board of Upper Saucon Township,* 143 Pa.Commonwealth Ct. 469, 599 A.2d 286 (1991).

At the hearings, Prange presented evidence tending to show that before 1972, Leaman and his predecessor may have used some portion of what is now Lot No. 2 as a depository for car parts and machinery. However, Jacob M. Esh, who acquired Lot No. 1 from Leaman in 1975, stated in the affidavit admitted into evidence that "[at] the time I began to use the property, a fence divided the service station tract from the adjoining tract to the south." Moreover, Park Prange, vice president of Prange, acknowledged the existence of a fence near the boundary line between Lot No. 1 and Lot No. 2. He testified as follows concerning the use of the tract located to the east of the fence:

> Q  So when you bought the land, this portion to the east of the fence area, as I will call it, was used solely for pasture land?
>
> A  Well, it was fenced in. If you want to call it pasture land. It was rocks and trees.
>
> Q  When did you first start using any of the portion east of the fence for your operations?
>
> A  '89 when we leveled the hill off.
>
> Q  And what do you have placed there?
>
> A  Tractor-trailers.
>
> Q  How many tractor-trailers?
>
> A  Approximately 18 to 25 on weekends.

September 15, 1992 hearing, N.T., p. 28. He also admitted at one point during the hearing that the area where he proposes to erect a building was previously used for sheep grazing. Further, it is undisputed that in 1972, there were no structures or improvement on the area of Lot No. 2 except a sheep shed. Other witnesses testified that the area of Lot No. 2 was basically swamp land and used for grazing sheep. The notation on the subdivision plan submitted in 1975 stated that the use of Lot No. 1 was commercial and the use of the remainder of Leaman's land was agricultural.

In a zoning case, a zoning hearing board is the sole judge of the credibility of the witnesses and the weight to be given to their testimony. *McDonald v. Zoning Board of*

*Adjustment,* 133 Pa.Commonwealth Ct. 664, 577 A.2d 240 (1990). The Board rejected the evidence presented by Prange and found that at the time of the enactment of the Zoning Ordinance, the area of Lot No. 2 was primarily used as a pastureland for grazing sheep and not in the operation of the nonconforming use of Lot No. 1. Since the Board's findings are supported by substantial evidence, Prange failed to establish a nonconforming use of Lot No. 2.[3]

Moreover, the record clearly establishes that any nonconforming use of Lot No. 2, even if established, has since been abandoned for a period of more than twelve months, and therefore may not now be reestablished pursuant to Section 1801.2.[4] The question of abandonment is one of fact, and the burden of proving abandonment of a nonconforming use is upon a party asserting the abandonment. *Miorelli v. Zoning Hearing Board of Hazleton,* 30 Pa.Commonwealth Ct. 330, 373 A.2d 1158 (1977). A party asserting the abandonment of a nonconforming use must show overt acts or failures to act demonstrating actual abandonment. *Grace Building Co. v. Zoning Hearing Board of City of Allentown,* 38 Pa.Commonwealth Ct. 193, 392 A.2d 892 (1978). However, where, as here, the applicable zoning ordinance places a reasonable time limitation on the right to resume a nonconforming use, the intention to surrender the right to that use may be presumed from the expiration of the designated time period. *Merion Park Civic Ass'n v. Zoning Hearing Board of Lower Merion Township,* 109 Pa.Commonwealth Ct. 38, 530 A.2d 968 (1987).

At the hearing, Prange acknowledged, and the Board found, that after he purchased the two lots in 1982, he did not use Lot No. 2 for his business operations until 1989. At that time, he leveled off a hill and cut down trees on Lot No. 2, and

3. Since we conclude that Prange failed to establish a nonconforming use of Lot No. 2, there is no basis for its request to substitute a nonconforming use of Lot No. 2 to other nonconforming use.

4. Section 18001.2 provides: "No nonconforming use may be re-established after it has been discontinued for 12 months. Vacation of land or buildings or the nonoperative status of the use normally carried on upon the property shall be evidence of discontinuance."

began to use it for parking, washing and servicing tractor trailers. Moreover, in 1975, Lot No. 1 and Lot No. 2 came under separate ownership of the Eshes and Leaman, respectively, and Leaman and the Wagners thereafter did not maintain commercial activities on Lot No. 2. Finally, Jacob M. Esh stated in his affidavit that "in April/May, 1981 I discontinued the use of the property and sold it to Lester M. Prange, Inc. on February 11, 1982." Therefore, the record amply supports the Board's conclusion that any nonconforming use of Lot No. 2, even if proven by Prange's evidence, was discontinued and abandoned for a period in excess of twelve months and cannot be reestablished pursuant to Section 1801.2.

Having concluded that Prange failed to establish the existence of a nonconforming use on Lot No. 2 and that any nonconforming use, if any, has been abandoned, our next inquiry is whether Prange is entitled to expand his nonconforming use of Lot No. 1 onto adjoining Lot No. 2.

Under the doctrine of natural expansion, a nonconforming use may be extended in scope, as the business increases in magnitude, over ground occupied by the owner for the business at the time of the enactment of the zoning ordinance. *Chartiers Township v. William H. Martin, Inc.,* 518 Pa. 181, 542 A.2d 985 (1988); *Peirce Appeal,* 384 Pa. 100, 119 A.2d 506 (1956); *Piecknick v. South Strabane Township Zoning Hearing Board,* 147 Pa.Commonwealth Ct. 308, 607 A.2d 829 (1992). However, the right of natural expansion is not unlimited, and a municipality has the right to impose reasonable restrictions on the extension of a nonconforming use. *Kibblehouse.* Section 1801.1 of the zoning ordinance allows, by special exception, expansion of a nonconforming use if the proposed expansion (1) does not exceed 100% of the square foot area used at the time of the enactment of the ordinance and (2) does not cause increased detrimental effects on the surrounding properties.

First, Prange's proposal does not meet Section 1801.1 because its proposed additional building contains 5,250 square feet, which far exceeds 100% of the 3,600 square foot area

used in 1972. Moreover, under the doctrine of natural expansion, "a landowner has a right only to extend the *scope* of his nonconforming use *over the portion of his lot devoted to his lawful business purpose at the time of the ordinance.*" *Piecknick,* 147 Pa.Commonwealth Ct. at 321, 607 A.2d at 835 (emphasis in original).

In *Overstreet,* the owner of a nonconforming mobile home park, who utilized one half of his tract, sought permission to install mobile homes on the remaining half of the property owned at the time of the enactment of the ordinance. This court upheld the board's denial of the proposal because the owner failed to establish that the entire tract was devoted to the operation at the time of the enactment of the zoning ordinance. Similarly, in *Key Realty Co. Zoning Case,* 408 Pa. 98, 182 A.2d 187 (1962), the Court rejected the attempt by the owner of two adjoining lots to expand the nonconforming use in one lot to another, noting that the proposed building did not constitute a natural extension of the nonconforming use *to which the land was devoted.* The Court concluded that the owner's request was tantamount to an attempt to create an entirely new nonconforming use on the second lot.

In the matter *sub judice,* there is a lack of evidence showing that the area of Lot No. 2 upon which Prange proposed to construct a building was devoted in 1972 for use in the operation of the business. Hence, without such evidence, we may not approve Prange's proposal to expand the nonconforming use onto adjoining Lot No. 2 by special exception. Otherwise, we would be creating a *new* nonconforming use on Lot No. 2. *Key Realty; Overstreet.* Hence, Prange may not expand the nonconforming use on Lot No. 1 onto Lot No. 2 unless it meets the criteria for granting a variance for such expansion. *Piecknick.*

To establish entitlement to a variance, a property owner must prove, *inter alia,* that a zoning ordinance imposes an unnecessary hardship because of unique physical conditions peculiar to the property, and the requested variance will not destroy the character of the neighborhood or permanently

impair appropriate use or development of adjacent property, nor be detrimental to the public welfare. Section 910.2 of the Pennsylvania Municipalities Planning Code, Act of July 31, 1968, P.L. 805, *as amended,* added by Section 89 of the Act of December 21, 1988, P.L. 1329, 53 P.S. § 10910.2; *Valley View Civic Ass'n v. Zoning Board of Adjustment,* 501 Pa. 550, 462 A.2d 637 (1983); *Curtis Investment Co. v. Zoning Hearing Board of Borough of West Mifflin,* 140 Pa.Commonwealth Ct. 302, 592 A.2d 813 (1991). An applicant's burden is a heavy one, and a variance should be granted sparingly and only under exceptional circumstances. *Randolph Vine Assoc. v. Zoning Board of Adjustment of Philadelphia,* 132 Pa.Commonwealth Ct. 452, 573 A.2d 255 (1990), *appeal denied,* 527 Pa. 589, 588 A.2d 512 (1991).

At the hearing, when asked if the proposed activities on Lot No. 2 could be located to other property owned by Prange, Park Prange stated: "Well, I don't see no reason that you couldn't. But for my son runs the garage up there and we have another party runs one in Kirkwood." (April 11, 1989 Hearing, N.T., p. 63.) Prange failed to present any evidence demonstrating either that physical characteristics of Lot No. 2 were such that it could not be used for the permitted purpose of the R–Rural District or that the characteristics of the area were such that the lot has either no value or only a distress value for any permitted purpose. *Davis v. Zoning Board of Adjustment,* 78 Pa.Commonwealth Ct. 645, 468 A.2d 1183 (1983). Thus, Prange failed to establish unnecessary hardship if the requested variance is denied.

Moreover, the neighbors who opposed the proposed expansion of the nonconforming use testified that Prange currently keeps up to thirty tractor-trailers on Lot No. 2; the trucks make wide turns when entering and exiting from Lot No. 2, creating a safety hazard; they were experiencing increased pollution and noise caused by the trucks; they have difficulty getting to sleep because of extremely high wattage lights installed on Lot No. 2. Thus, the Board's conclusion that the proposed building would be detrimental to the public welfare

is also supported by substantial evidence. Hence, Prange failed to satisfy the elements necessary to granting a variance.

Accordingly, since the Board did not abuse its discretion nor commit an error of law in denying Prange's application and its appeal from the enforcement notice, the order of the trial court is affirmed.

## ORDER

AND NOW, this 17th day of August, 1994, the order of the Court of Common Pleas of Lancaster County in the above-captioned matter is hereby affirmed.