## Suburban Realty L.P. v. Zoning Hearing Board of Stroud Township

C.P. of Monroe County, no. 2930 Civil 2010.

*Marc R. Wolfe,* for appellant.
*David J. Williamson,* for appellee.
*Richard E. Deetz* and *Joseph A. Bubba* for intervenors.

ZULICK, *J.,* August 10, 2010—Suburban Realty L.P. has appealed the decision of the zoning hearing board (ZHB) of Stroud Township dated March 11, 2010 concerning the special exception and variance applications of AKA-PRA limited partnership. The parties have filed briefs and the case was argued on June 7, 2010.

## DISCUSSION

Suburban owns property at the corner of Applegate Road and State Route 611 in Stroud Township, Monroe County, Pennsylvania. The western property line is contiguous with AKA-PRA's property (the property) located at 71919 S.R. 611. AKA-PRA's property contains approximately 1.75 acres and is improved with a building which was formerly the La-Z- Boy Furniture Galleries. The property is located in the C-2 (General Commercial) zoning district.

After acquiring the property, AKA-PRA obtained municipal approval to expand the existing structure and operate an ambulatory surgical center. In addition to surgical facilities the approved ambulatory surgical center included medical offices and x-ray imaging facilities. The land development approval was not contested by any party and is not the subject of any appeal.

AKA-PRA now proposes to modify and expand the ambulatory center to facilitate the performance of surgical procedures requiring limited overnight stays. The original structure contained 17,334 square feet and the proposed facility will be approximately 27,000 square feet. AKA-PRA submitted an application to the ZHB for special exception approval for a specialty hospital and for a variance to increase the maximum ground coverage

on the property from 60 percent to 65.2 percent. The ZHB held hearings on February 3, 2010 and March 3, 2010. The ZHB issued a written decision on March 11, 2010 which approved AKA-PRA's application for special exception and variance. The ZHB added a condition that AKA-PRA construct a sidewalk parallel to S.R. 611.

Suburban filed a notice of appeal on April 5, 2010. The notice of appeal asserts that the ZHB erred in finding that AKA-PRA sustained its burden of proof under the special exception criteria and the ZHB erred as a matter of law in disregarding the ground cover requirement. The township intervened on April 13, 2010. AKA-PRA intervened on May 4, 2010.

Oral argument was heard on June 7, 2010 and parties filed briefs.

## DISCUSSION

On appeal when no new evidence is presented, this court's scope of review "is limited to determining whether the governing body committed an error of law or abused its discretion." *Ruf v. Buckingham Township,* 765 A.2d 1166, 1168 n.2 (Pa. Commw. 2001). The governing body abuses its discretion only when its decision is not supported by substantial evidence, which is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Valley View Civic Association v. Zoning Board of Adjustment,* 501 Pa. 550, 555, 462 A.2d 637, 640 (1983); *North Chestnut Hill Neighbors v. Zoning Board of Adjustment of the City of Philadelphia,* 928 A.2d 418, 424 (Pa. Commw. 2007). (citation omitted) This court must uphold the board's ruling if it finds that the board did not commit an error of law or abuse its discretion.

The zoning hearing board is the sole judge of the credibility of the witnesses and the weight to be given to their testimony. *Appeal of Lester M. Prange Inc.*, 166 Pa. Commw. 626, 647 A.2d 279 (1994).

The two central issues on appeal are: whether the ZHB erred as a matter of law in determining (1) that AKA-PRA sustained its burden of proof under the special exception criteria, and (2) that the variance from the ground cover requirement was de minimis. Suburban argues that the proposed use of the property should be classified as a hospital which is not permitted as a special exception. It also contends that the ground cover variance is not warranted because the applicant did not meet the requirements for a variance, and the variance is not de minimis. Suburban also contends that sidewalks should not have been excluded from the calculation of maximum ground coverage. Suburban also filed a reply brief containing argument that the ZHB abused its discretion by allowing testimony concerning confidential settlement negotiations.

## 1. *The Special Exception*

Pursuant to the Stroud Township Zoning Ordinance, schedule 1, a "specialty hospital" is designated as a "health service" which is a special exception in the C-2 district. "A special exception is not an exception to a zoning ordinance, but rather, a use which is expressly permitted, absent a showing of a detrimental effect on the community." *Greaton Properties Inc. v. Lower Merion Township*, 796 A.2d 1038, 1045 (Pa. Commw. 2002). Where a use is permitted in an area by special exception, it is presumed that the local legislative body already

considered concerns such as health, safety, and general welfare. *Shamah v. Hellem Township Zoning Hearing Board,* 167 Pa. Commw. 610, 619, 648 A.2d 1299, 1303 (1994).

The initial burden is on the applicant to establish that the proposed use satisfies the objective requirements of the zoning ordinance for the grant of a special exception. *In re Appeal of Brickstone Realty Corp.,* 789 A.2d 333, 340 (Pa. Commw. 2001). Once the burden is met, the burden then shifts to the objectors. *Id.* "[O]bjectors have the burden of production, as well as the burden of persuasion, where the statute does not . . . provide otherwise, of establishing the existence of non-specific criteria, such as detriment to the public health, safety, or welfare, which would preclude granting of a special exception." *Tuckfelt v. Zoning Board of Adjustment of City of Pittsburgh,* 80 Pa. Commw. 496, 502, 471 A.2d 1311, 1314 (1984).

Section 4.820 of the Stroud Township Zoning Ordinance provides the standards for special exception. It provides as follows:

"4.821 Shall not cause substantial injury to the value of other property where it is to be located.

"4.822 Shall conform with regulations applicable to the district where located or shall conform to more specific standards listed in article V of the ordinance, and shall conform to the intent of the district.

"4.823 Shall be compatible with adjoining development.

"4.824 Shall provide adequate landscaping and screening to protect and enhance adjoining areas . . .

"4.825 Shall provide off-street parking and loading and access in keeping with this ordinance so as to minimize interference with traffic on the local streets.

"4.826 Shall not jeopardize the public health, safety, welfare, and convenience.

"4.827 The board may place such additional safeguards which may be warranted by the character of the area."

Suburban argues that the proposed facility is a hospital within the definition of the ordinance and requires a minimum lot size of five acres.

Section 2.305 of the ordinance defines hospital to "include clinic, and any other place for diagnosis, treatment, or other care of human ailments." "Specialty hospital" is not defined, nor is clinic. NT 148 (2/3/2010). Section 5.390 requires five acres for a hospital. NT 131 (2/3/10). A clinic requires one acre. Stroud Township Zoning Ordinance §5.390.

A zoning hearing board's interpretation of its own zoning ordinance is entitled to great weight and deference from a reviewing court. *Borough of Milton v. Densberger,* 719 A.2d 829 (Pa. Commw. 1998). The basis for this deference is knowledge and expertise that a zoning hearing board possesses to interpret the ordinance that it is chargers with administering. *Willits Woods Associates v. Zoning Board of Adjustment of City of Philadelphia,* 138 Pa. Commw. 62, 587 A.2d 827 (1991).

Mr. Patel testified that the proposed use for the property is a medical office and specialty hospital. NT 16 (2/3/10). AKA-PRA's specialty hospital is envisioned to be an extension of an ambulatory surgery center where patients stay overnight for one or more nights. NT 17

(2/3/10). The typical length of stay is one day, occasionally two or rarely three. NT 17 (2/3/10). Orthopedic and urological surgeries will be performed at this facility and 10-12 hospital beds will be available. NT 18-19 (2/3/10). The facility will contain two operating rooms and possibly a procedure room. NT 47 (2/3/10). Patel testified that a traditional hospital is different because it offers more functions. NT 18 (2/3/10). The medical office will perform plastic and cosmetic surgery. NT 20 (2/3/10).

Common sense informs the court that the proposed use of the property is not a hospital in the general sense of the word. The facility will be not be used for emergencies and will not be open to the general public. Surgeons will perform scheduled minor surgical procedures on patients. The ZHB determined that the use was more akin to a clinic or a health service center than a hospital and therefore, only required the one acre lot minimum. ZHB decision, page 7. Also, schedule V of the zoning ordinance recognizes that a "general medical and surgical hospital" and a "specialty hospital" are separate uses. If the township meant a specialty hospital to be included as a general hospital, it would not have created them as separate uses in the ordinance.

Suburban also argues that the proposed use will be harmful to the community. The property is located on S.R. 611 in a busy commercial corridor containing retail uses, health care uses, and industrial uses. NT 21 (2/3/10). A large ravine separates Partnership's property and Suburban's property. NT 23, 87 (2/3/10).

Suburban called Susan Savitski, an expert in traffic engineering. NT 100 (2/3/10). Ms. Savitski calculated the number of trips to the La-Z-Boy store to be 94. NT (103 2/3/10). She calculated a medical office as being

712 trips. NT 104 (2/3/10). The trips for a part office, part hospital building is 652. NT 104 (2/3/10). Ms. Savitski opined that the driveway between the property and Suburban's property might need to be widened because of the increased trips as it would be close to the cut-off for low volume designation. NT 108-109 (2/3/10). Mr. Mancinelli, an engineer also called by Suburban, testified that he had concerns about salting and snow removal, water buildup, women walking in high heels, and breakdown of pervious materials due to traffic. NT 134-35 (2/3/10). Those concerns were mostly related to the pervious cover issue addressed *infra.*

Amit Mukherjee, was an engineering expert called by AKA-PRA. NT 69 (2/3/10). He opined that the specialty hospital will create less traffic than the La-Z-Boy or an ambulatory surgery center. NT 70 (2/3/10). The Pennsylvania Department of Transportation allowed AKA-PRA to transfer the name on the highway occupancy permit from La-Z-Boy to the specialty hospital because there would not be increased traffic. NT 91-91 (2/3/10). The permit is a low-volume permit, meaning less than 700 cars per day. NT 97 (2/3/10).

Davis Chant, an experienced real estate broker, testified for AKA-PRA that a specialty hospital would add value to the area, especially since the surrounding properties are not in the best condition. NT 10 (3/3/10); NT 25-26 (2/3/10). He noted that medical businesses are among the best-rated investment properties. "The market assumes that if you're in the medical business, you'll pay your rent." NT 10 (3/3/10).

The ZHB found AKA-PRA's witnesses to be more credible and did not find evidence of injury to the value of surrounding properties. They found the project to be

compatible with adjoining development. It is the province of the ZHB to determine credibility. *Appeal of Lester M. Prange Inc.,* 166 Pa. Commw. 626, 647 A.2d 279 (1994). I find no error in the zoning hearing board's approval of the requested special exception.

## 1a. Parking

Although parking was not included in the decision portion of the ZHB's decision, it was mentioned in the discussion portion in the following way "[t]he applicant will also use materials deemed as pervious under the SALDO and will provide more parking spaces than required." *ZHB decision,* page 7. Also, the ZHB entertained evidence in the form of testimony out parking.

Pursuant to zoning ordinance schedule VI, the required parking for a hospital/medical center is one space for every 1.5 beds plus one space per employee student, intern, or volunteer. Four spaces are required "for every doctor, dentist, or professional person plus one space for every employee and professional". Stroud Township Zoning Ordinance, Schedule VI. The final determinations about parking will be made in the land development stage because the final plan will be done at that time. NT 50, 74 (2/3/10).

Mr. Patel testified that 29 parking spaces were needed, but 34 were on-site. NT 36 (2/3/10). The township engineer found the number of parking spaces acceptable and the planning commission did not find the parking to be in violation of the zoning ordinance. NT 36-37 (2/3/10).

Mr. Mancinelli testified that he believed that nurses should be counted as licensed professional, therefore,

increasing the amount of parking spaces required. NT 131 (2/3/10). Mr. Mancinelli suggested that 47 spaces were required. NT 132 (2/3/10). Also, relying on AKA-PRA's application for increased sewage flows, he believed there will be higher traffic than that for the retail store. NT 131 (2/3/10).

In its brief, Suburban now argues that the property contains too any parking spaces and should not have more than 29 spaces. This is in direct opposition to what-Suburban argued before the ZHB. I find no error in the ZHB's acceptance of the parking plan.

## 2. *Maximum Ground Coverage*

Suburban argues that the ZHB erred in granting partnership's a variance from the maximum ground coverage requirement asserting that evidence of an adequate hardship was not presented. An applicant seeking a variance has the burden of proof and "a variance should be granted sparingly and only under exceptional circumstances." *Rittenhouse Row v. Aspite,* 917 A.2d 880, 885 (Pa. Commw. 2006). A party seeking a variance has the burden of establishing (1) unnecessary hardship will result if the variance is denied, (2) the hardship arising from the impact of zoning regulations on the entire district, and (3) the proposed use will not be contrary to the public interest. *Chacona v. Zoning Hearing Board of Adjustment,* 143 Pa. Commw. 408, 412, 599 A.2d 255, 257 (1991).

A lesser form of proof is required where the application is for a dimensional variance, as opposed to a use variance. *Hertzberg v. Zoning Hearing Board of Adjustment of City of Pittsburgh,* 554 Pa. 249, 257, 721 A.2d 43, 47 (1998). In a dimensional zoning variance case,

such things as economic detriment, financial hardship, redevelopment of blighted properties, and characteristics of surrounding properties may be considered. *Id.* at 50.

Where the requirements for a variance have not been met, a zoning hearing board may grant a de minimis variance "where only a minor deviation from the zoning ordinance is sought and rigid compliance is not [absolutely] necessary to protect the public policy concerns inherent in the ordinance." *Constantino v. Zoning Hearing Board of the Borough of Forest Hills,* 152 Pa. Commw. 258, 265, 618 A.2d 1193, 1196 (1992). The decision of whether to grant a de minimis variance is left to the discretion of the local zoning board. *Alpine Inc. v. Abington Township Zoning Hearing Board,* 654 A.2d 186, 191 (Pa. Commw. 1995). The percentage of the requested variance is not the sole criteria in determining what is de minimis. *Township of Middletown v. Zoning Hearing Board of Middletown Township,* 682 A.2d 900, 902 (Pa. Commw. 1996).

Pursuant to schedule II of the zoning ordinance, the maximum ground coverage permitted in the C-2 zoning district is 60 percent. NT 75 (2/3/10). AKA-PRA proposed a maximum ground cover of 65.2 percent. NT 75 (2/3/10). AKA-PRA presented evidence that this was minor variation on a 1.75 acre property, and was mitigated through the use of pervious materials. Pervious materials are substitute construction materials which, while functional for the purposes typically facilitated by traditional impervious materials such as concrete and asphalt, are designed to allow infiltration of water through what typically would be impervious area. NT 79 (2/3/10). The detention basin in the back of the build-

ing will be reconfigured to retain the extra stormwater runoff from the increased ground cover. NT 78 (2/3/10).

AKA-PRA presented evidence that the Township had accepted the use of pervious materials in the subdivision and land development ordinance (SALDO). NT 80 (2/3/10). Under SALDO, these materials would not constitute ground cover and no variance would be needed. NT 80 (2/3/10) The concept of previous materials is not included in the zoning ordinance. NT 94 (2/3/10).

Suburban argues that the increased ground cover will adversely affect the public interest because it will have a deleterious effect on neighboring properties, streets, and streams. They also argue that the maximum ground coverage requirement promotes increased light, air circulation, and aesthetic benefits of natural or manmade landscaping.

The ZHB found that partnership satisfied the burden necessary to obtain a de minimis variance.

"The amount of the variance is 5.2 percent over the allowed 60 percent lot coverage. In the scope of a 1.75 acre lot, this is minimal. The applicant will also use materials deemed as pervious under the SALDO and will provide more parking spaces than required. The applicant meets the grounds for a de minimis variance in the view of the Board" ZHB decision, page 7.

Suburban contends that this was not a de minimis variance, and that the actual variance is 8.74 percent from the maximum impervious coverage. However, the calculation used by AKA-PRA and the ZHB is required by section 2.295 of the ordinance. It was used by the township's engineer, and was also confirmed by Suburban's

engineer, Mr. Mancinelli: "What I understand is that the excess impervious coverage is approximately 5 percent, which is the 4,000." NT 137 (2/3/10).

Both parties have cited precedent as to whether the variance for additional impervious coverage is de minimis as a matter of law. See *Appeal of Ressler Mill Foundation,* 132 Pa. Commw. 569, 573 A.2d 675 (1990) (a variance that was 4.7 percent of the lot width requirement was considered de minimis) and *Leonard v. Zoning Hearing Board of City of Bethlehem,* 136 Pa. Commw. 182, 186, 583 A.2d 11, 13 (1990) (allowing a subdivision of a lot which would have 7,500 square feet, 500 feet below the 8,000 square foot minimum lot size, was not de minimis). These cases turn in part on the effect the de minimis variance will have on the public interest. Here the ZHB considered AKA-PRA's use of pervious materials and their modification to the detention basin in finding a de minimis variance. I find no error of law.

## 2a. Sidewalks

Section 2.295 defines the term "maximum ground coverage" to include not only the "floor area of all principal and accessory buildings" but also "sidewalks". In granting a variance, the ZHB may attach reasonable conditions and safeguards as it may deem necessary to implement the purposes of this ordinance. *See* Stroud Township Zoning Ordinance §11.940.

The ZHB determined that sidewalks on the side of the property facing S.R. 611 would be a condition and would not be included in calculating maximum ground coverage. Suburban argues that the inclusion of the sidewalk would increase the ground cover. While it is true that the ground cover is increased, this increase is less than one

percent. The ZHB was well within it's discretion to determine that increase to be de minimis and the creation of sidewalks is within their discretion for the safety of the public.

### 3. Testimony of Settlement Negotiations

The written decision does not reference the testimony of settlement negotiations between Suburban and partnership; however, the township and the ZHB briefly reference this testimony in their brief, as does Suburban in its reply brief. Proceedings before a municipal governing body are less formal than those held in a court of law. *Piper Group Inc. v. Bedminster Township Board of Supervisors*, 992 A.2d 224, 242 (Pa. Commw. 2010). 53 P.S. § 10908(6) provides that "[f]ormal rules of evidence shall not apply, but irrelevant, immaterial or unduly repetitious evidence may be excluded."

While it is true that settlement negotiations are not generally admissible in court proceedings, Pa.R.E. 408, the ZHB has relaxed rules of evidence. The question before the court is whether the ZHB abused its discretion in applying the provisions of the ordinance to the facts at hand, not the intentions of the parties involved. The court does not find that the ZHB abused its discretion in allowing brief testimony about settlement discussions between Suburban and partnership.

### ORDER

And now, August 10, 2010, following argument, the decision of the zoning hearing board of Stroud Township of March 11, 2010 is affirmed.